**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.



FILE
OFFICE
OCT 09 2014
OF WASHINGTON

CHIEF JUSTICE

This opinion was filed for record
at 8:00 AM on Oct 9, 2014

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| TERESA SCHMIDT, | ) | |
| | ) | |
| Petitioner, | ) | No. 88460-9 |
| v. | ) | |
| | ) | En Banc |
| TIMOTHY P. COOGAN and DEBORAH | ) | |
| COOGAN, and the marital community | ) | |
| comprised thereof; and THE LAW | ) | Filed    OCT 09 2014 |
| OFFICES OF TIMOTHY PATRICK | ) | |
| COOGAN and all partners thereof, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

WIGGINS, J.—This legal malpractice case presents two questions that we have never before addressed. The first is whether the elements of legal malpractice include the collectibility of an underlying judgment. Jurisdictions are split. We adopt the growing trend to make the uncollectibility of an underlying judgment an affirmative defense that negligent attorneys must plead and prove. The second is whether emotional distress damages are available in legal malpractice cases. We hold that the facts of this case do not support an award of emotional distress damages.

## FACTS AND PROCEDURE

In December 1995, Teresa Schmidt slipped and fell while visiting a Tacoma Grocery Outlet. She retained Timothy Coogan to represent her in a claim against the store. On December 21, 1998, just days before the statute of limitations ran, Coogan

filed a complaint naming the wrong defendant. He subsequently filed two amended complaints, but the trial court dismissed the case as barred by the statute of limitations.

Schmidt then filed a complaint against Coogan, asserting claims for negligence and breach of contract. The case went to trial in November 2003, and the jury returned a verdict in favor of Schmidt in the amount of $32,000 for past economic damage and $180,000 for noneconomic damages. The trial court granted a new trial on the issue of damages only, finding that Coogan was denied a fair trial. Schmidt's counsel gave an improper closing argument, and the damages were so excessive as to unmistakably indicate that the verdict was the result of passion and prejudice. The Court of Appeals affirmed the trial court's order granting a new trial on damages.[1]

In March 2010, Schmidt moved for leave to amend the complaint to add a claim for outrage/reckless infliction of emotional distress. She alleged that Coogan harassed, intimidated, and belittled her when she raised the problem of the statute of limitations before it expired.[2] During the 2003 trial, the jury was instructed to determine general damages arising out of Coogan's conduct and malpractice. In the second trial, however, Coogan challenged the availability of general damages in legal

---

[1] The Court of Appeals opinion followed our decision in *Schmidt v. Coogan*, 162 Wn.2d 488, 173 P.3d 273 (2007). In *Schmidt*, we held that Schmidt produced enough evidence of Grocery Outlet's constructive notice of the dangerous condition to withstand a motion for judgment as a matter of law. *Id.* at 492-93. Therefore, we reversed the Court of Appeal's holding that Coogan should have been granted judgment as a matter of law and directed the court to consider the remaining issues on appeal. *Id.*

[2] Schmidt worked at Coogan's law office for a portion of the time he was representing her. Their relationship extended beyond a simple attorney-client relationship.

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

malpractice cases. Because her counsel could not find settled authority either affirming or denying the availability of emotional distress damages in Washington, Schmidt sought to add a claim that encompassed the damages. The trial court denied Schmidt's motion to amend. Schmidt also filed a motion for summary judgment on the availability of general damages and a motion in limine. The court denied both motions.

After Schmidt rested her case in the damages-only trial, Coogan moved for judgment as a matter of law. He argued that collectibility was an essential element of legal malpractice and that Schmidt presented no evidence that a judgment against Grocery Outlet would have been collectible. The court denied the motion, and the jury returned a verdict in favor of Schmidt for $83,733.16 plus interest.

Coogan appealed the jury verdict, arguing that the trial court should have granted his motion for judgment as a matter of law. Schmidt cross appealed on the ground that general damages are available in attorney malpractice claims and that the trial court erred in denying her motion to amend the complaint. The Court of Appeals concluded that collectibility was an essential component of damages that Schmidt failed to prove, and it reversed the trial court's denial of Coogan's motion for judgment as a matter of law. *Schmidt v. Coogan*, 171 Wn. App. 602, 604, 287 P.3d 681 (2012), *review granted*, 177 Wn.2d 1019, 304 P.3d 115 (2013).

## ANALYSIS

The primary questions before us are (1) whether collectibility is an element of malpractice and (2) whether a plaintiff may recover emotional distress damages for legal malpractice. These are questions of law, which we review de novo. *Cost Mgmt.*

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Servs., Inc. v. City of Lakewood*, 178 Wn.2d 635, 641, 310 P.3d 804 (2013).

### I.  Collectibility

Our court has never addressed how the collectibility of an underlying judgment intersects with the elements of legal malpractice.  We hold that the burden of establishing collectibility is *not* on the plaintiff-client.  Rather, uncollectibility is an affirmative defense that a defendant-attorney must plead and prove.

Uncollectibility may be a relevant inquiry because it relates to proximate cause and damages elements of legal malpractice.  The essential elements are:

> "(1) The existence of an attorney-client relationship which gives rise to a duty of care on the part of the attorney to the client; (2) an act or omission by the attorney in breach of the duty of care; (3) damage to the client; and (4) proximate causation between the attorney's breach of the duty and the damage incurred."

*Ang v. Martin*, 154 Wn.2d 477, 482, 114 P.3d 637 (2005) (quoting *Hizey v. Carpenter*, 119 Wn.2d 251, 260-61, 830 P.2d 646 (1992)).  The measure of damages is the "amount of loss actually sustained as a proximate result of the attorney's conduct." *Matson v. Weidenkopf*, 101 Wn. App. 472, 484, 3 P.3d 805 (2000).  If the underlying judgment was uncollectible, for example, due to insufficient assets or bankruptcy, the lost value of the judgment is not the proximate result of an attorney's negligence.  The client could not have collected the judgment even if the attorney used reasonable care.

While the collectibility of an underlying judgment may be relevant, the great weight of public policy considerations support our holding that uncollectibility is an affirmative defense.  Traditionally, a majority of jurisdictions placed the burden of proving collectibility on the plaintiff.  *See McDow v. Dixon*, 138 Ga. App. 338, 339, 226

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

S.E.2d 145 (1976); *Whiteaker v. State*, 382 N.W.2d 112, 114-15 (Iowa 1986); *Jernigan v. Giard*, 398 Mass. 721, 723, 500 N.E.2d 806 (1986); *Eno v. Watkins*, 229 Neb. 855, 857, 429 N.W.2d 371 (1988). However, in more recent years, states have begun departing from this rule and have placed the burden on the defendant-attorney. *See Power Constructors, Inc. v. Taylor & Hintze*, 960 P.2d 20, 31 (Alaska 1998); *Clary v. Lite Machines Corp.*, 850 N.E.2d 423, 440 (Ind. Ct. App. 2006); *Jourdain v. Dineen*, 527 A.2d 1304, 1306 (Me. 1987); *Teodorescu v. Bushnell, Gage, Reizen & Byington*, 201 Mich. App. 260, 268, 506 N.W.2d 275 (1993); *Hoppe v. Ranzini*, 158 N.J. Super. 158, 171, 385 A.2d 913 (1978); *Carbone v. Tierney*, 151 N.H. 521, 533, 864 A.2d 308 (2004); *Kituskie v. Corbman*, 552 Pa. 275, 285, 714 A.2d 1027 (1998).

The traditional approach rests primarily on the theory that it is consistent with tort law: plaintiffs may recover only the amount that will make them whole (and not a windfall), and the plaintiff must prove both proximate cause and injury. *See Klump v. Duffus*, 71 F.3d 1368, 1374 (7th Cir.1995); *McKenna v. Forsyth & Forsyth*, 280 A.D.2d 79, 84, 720 N.Y.S.2d 654 (2001). This approach overlooks major policy concerns.

First, the traditional approach unfairly presumes that an underlying judgment is uncollectible when the record is silent. *See Power Constructors, Inc.*, 960 P.2d at 31-32. The presumption is unnecessary and requires a client to always prove the opposite, even when there is no real question regarding solvency. Generally, collectibility is an issue only after the client has established the existence of a fiduciary relationship, the failure of the attorney to exercise due care, the attorney's negligence resulted in losing a valid claim (i.e., proving the "case within a case"), and the amount of the lost judgment. The need to establish collectibility is the result of an attorney's

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

established malpractice at this point in the trial. It is a burden created by the negligent attorney. The presumption that a judgment would have been uncollectible places an unfair burden on the wronged client.

Second, the negligent attorney is in as good a position, if not better, than the client to discover and prove uncollectibility. If the underlying judgment would have been uncollectible, the original attorney should have advised his client of this fact. Failing to do so is negligent and, potentially, a breach of the attorney-client fiduciary relationship. Here, Coogan undertook an investigation of whether the slip-and-fall case was a good faith lawsuit when he represented Schmidt. Coogan testified by deposition (in a statement not placed into evidence before the jury) that an insurance company representative for Tacoma Grocery Outlet confirmed insurance coverage on more than one occasion. This suggests that the attorney is in a better position than the client to establish uncollectibility because the attorney has investigated the underlying claim closer to the time of the accident.

Third, the traditional approach has the unfortunate effect of introducing evidence of liability insurance into every legal malpractice case. The rules of evidence and the case law generally prohibit introducing evidence of liability insurance in negligence cases. *See* ER 411; *Todd v. Harr, Inc.*, 69 Wn.2d 166, 168, 417 P.2d 945 (1966) ("[T]he fact that a personal injury defendant carries liability insurance is entirely immaterial, and the deliberate or wanton injection of this matter into the case by plaintiff is ground for reversal."); *Kappelman v. Lutz*, 141 Wn. App. 580, 590, 170 P.3d 1189 (2007) ("[T]he fact that a defendant in a personal injury case carries liability insurance is not material to the questions of negligence and damages."). Our holding

is more consistent with this rule by limiting introduction of evidence of liability insurance to a subset of the cases, i.e., when an attorney raises uncollectibility as an affirmative defense.

Fourth, a delay usually, if not always, ensues between the original injury and the legal malpractice action. The delay may hinder the client's ability to gather evidence of collectibility. Here, Schmidt fell in 1995 and nearly two decades later this case is still unresolved. In that amount of time, companies may have failed, ownerships changed, and other circumstances may have made evidence of collectibility unavailable. It is unfair to place this burden on plaintiffs when the attorney's negligence created the delay in the first place. *See Kituskie*, 552 Pa. at 283, 285.

Fifth, clients are further burdened because requiring them to prove collectibility ignores the fact that judgments are valid for 10 years after entry in Washington and may be renewed thereafter. *See* RCW 4.56.190; 28 MARJORIE DICK ROMBAUER, WASHINGTON PRACTICE: CREDITORS' REMEDIES—DEBTORS' RELIEF § 7.8 (1998 & Supp. 2014); *see also Hoppe v. Ranzini*, 158 N.J. Super. 158, 169-71, 385 A.2d 913 (1978). This is significant because people and entities have financial positions that change over time. If a judgment would not have been immediately collectible against the original defendant, it may have become collectible over time. Ignoring this reality unfairly harms clients. It also seems to go against the guiding principle in tort law, which "'is to make the injured party as whole as possible through pecuniary compensation.'" 16 DAVID K. DEWOLF & KELLER W. ALLEN, WASHINGTON PRACTICE:

7

TORT LAW AND PRACTICE § 6:1, at 259 (2013) (quoting *Shoemake ex rel. Guardian v. Ferrer*, 168 Wn.2d 193, 198, 225 P.3d 990 (2010)).

Sixth, placing the burden of disproving collectibility on the negligent attorney acknowledges the important fiduciary relationship between client and attorney. *See Hoppe*, 158 N.J. Super. at 171. The traditional approach places every burden on the client. Our holding is more balanced. It requires the client to prove the existence of a fiduciary relationship, that the attorney did not exercise proper care, that this negligence caused the loss of a judgment, and the amount of that loss. If the wrongdoer believes the lost judgment amount could not have been collected from original defendant, the burden is on him or her to establish the fact as an affirmative defense.

After weighing these policy concerns, we conclude that the plaintiff-client does not bear the burden of establishing collectibility. Rather, a negligent attorney may raise uncollectibility as an affirmative defense to mitigate or eliminate damages.

Coogan did not argue in either of the two trials that a judgment against Grocery Outlet would be uncollectible. Nor did he argue that collectibility was an affirmative defense. He argued in an oral motion for judgment as a matter of law only that Schmidt presented no evidence of collectibility, and the judge did not err in denying his motion because Schmidt presented sufficient evidence of damages. Therefore, we reverse the Court of Appeals. Coogan is not entitled to a third trial concerning whether he may prove the affirmative defense.

The concurrence argues that we should not address the merits of Coogan's collectibility argument for two reasons: it was not raised in the first trial and Coogan

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

invited the error when he successfully moved at the second trial to exclude evidence of Coogan's malpractice insurance policy. While we are sympathetic with the unfairness of allowing Coogan to raise this issue for the first time after the case had been pending for several decades and after multiple appellate reviews, we address the issue because it is important and in order to provide guidance on legal malpractice cases in the future.

Our appellate rules allow us to decline to address on appeal issues inadequately raised at the trial court, but they do not require us to decline consideration of such issues. RAP 2.5(a) ("The appellate court *may* refuse to review any claim of error which was not raised in the trial court." (emphasis added)). Our rules also encourage us to decide cases on the merits, not on procedural flaws. RAP 1.2(a) ("These rules will be liberally interpreted to promote justice and facilitate the decision of cases on the merits. Cases and issues will not be determined on the basis of compliance or noncompliance with these rules except in compelling circumstances where justice demands[ subject to timeliness exceptions not relevant here].")

The concurrence would also decline to address collectibility on the ground of invited error, reasoning that Coogan succeeded in excluding evidence that the grocery store was insured—thus providing an asset making any judgment collectible—and then arguing that Schmidt failed to present any evidence of collectibility. Coogan's argument to exclude evidence of insurance was inconsistent with his argument that Schmidt was required to prove collectibility, but it did not lead to invited error because the trial court did not decide whether collectibility was an element of legal malpractice.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Instead, the trial court held that collectibility was outside the scope of the remanded trial on damages.

The issue of collectibility was extensively briefed by the parties in almost every brief filed here and in the Court of Appeals. The issue is of first impression in Washington State, and we granted review in order to address it. Making collectibility an element of a legal malpractice claim would be a major change in litigating these cases in Washington. While we respect the differing opinion of the concurrence, this was an appropriate case in which to exercise our discretion to resolve the issue.

## II. Damages

Schmidt also argues that the trial court and the appellate court denied her right to recover emotional distress damages and attorney fees. The measure of damages is the "amount of loss actually sustained as a proximate result of the attorney's conduct." *Matson*, 101 Wn. App. at 484. We hold that the plaintiff in a legal malpractice case may recover emotional distress damages when significant emotional distress is foreseeable from the sensitive or personal nature of representation or when the attorney's conduct is particularly egregious. However, simple malpractice resulting in pecuniary loss that causes emotional upset does not support emotional distress damages. Here, the nature of representation was not sensitive nor was Coogan's conduct particularly egregious. We hold that Schmidt is not entitled to attorney fees.

Because no Washington case has settled whether emotional distress damages are available in a legal malpractice action, we look to the availability of emotional

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

distress damages under other Washington claims and consider the rules developed in other jurisdictions.

We begin by analyzing the availability of emotional distress damages in Washington. When emotional distress is the sole damage resulting from negligent acts, our court is cautious in awarding damages. *See Bylsma v. Burger King Corp.*, 176 Wn.2d 555, 560-61, 293 P.3d 1168 (2013). Originally, we adopted a general rule of "no liability for mental distress" when a "defendant's actions were negligent and there was no impact to the plaintiff . . . ." *Hunsley v. Giard*, 87 Wn.2d 424, 432, 553 P.2d 1096 (1976). However, we departed from this rule and now allow recovery when a plaintiff's emotional distress is "within the scope of foreseeable harm . . . , a reasonable reaction given the circumstances, and . . . manifest by objective symptomatology." *Bylsma*, 176 Wn.2d at 560.

Our reluctance to award emotional distress damages absent an impact in negligence cases contrasts starkly to emotional distress damages for intentional torts. "From early in its history, this court has allowed recovery for damages for mental distress . . . when the defendant's act was willful or intentional." *Hunsley*, 87 Wn.2d at 431; *see Kloepfel v. Bokor*, 149 Wn.2d 192, 201, 66 P.3d 630 (2003) (intentional infliction of emotional distress); *Birchler v. Castello Land Co.*, 133 Wn.2d 106, 116, 942 P.2d 968 (1997) (violation of the timber trespass statute); *Cagle v. Burns & Roe, Inc.*, 106 Wn.2d 911, 914-18, 726 P.2d 434 (1986) (wrongful discharge in violation of public policy). We have also allowed emotional distress damages in a variety of other statutory and common law tort claims. *See Chuong Van Pham v. Seattle City Light*, 159 Wn.2d 527, 533-38, 151 P.3d 976 (2007) (Washington Law Against

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Discrimination, ch. 49.60 RCW); *Berger v. Sonneland*, 144 Wn.2d 91, 112-13, 26 P.3d 257 (2001) (medical malpractice under chapter 7.70 RCW based on unauthorized disclosure by a physician of confidential information); *Whaley v. Dep't of Soc. & Health Servs.*, 90 Wn. App. 658, 674, 956 P.2d 1100 (1998) (breach of professional duty by a day care provider); *Price v. State*, 114 Wn. App. 65, 71-74, 57 P.3d 639 (2002) (wrongful adoption). With the increasing availability of emotional distress damages, we see no reason to categorically preclude the damages in attorney malpractice actions.

We now turn to the issue of when emotional distress damages are available for attorney negligence. To determine whether emotional distress damages are compensable, we should consider the foreseeability of emotional distress. *See Hunsley*, 87 Wn.2d at 435 ("The element of foreseeability plays a large part in determining the scope of defendant's duty."). In *Bylsma*, we noted that the court has allowed emotional distress damages in cases concerning "emotionally laden personal interests, and [when] emotional distress was an *expected result* of the objectionable conduct . . . ." 176 Wn.2d at 561 (emphasis added). The nature of the parties' relationship is also relevant to foreseeability of emotional distress damages. *See Price v. State*, 114 Wn. App. 65, 71-74, 57 P.3d 639 (2002). In *Price*, the Court of Appeals stated:

> The availability of emotional distress damages depends on whether the parties had a relationship that preexisted the defendant's breach of duty. If the parties lacked a preexisting relationship, and the defendant's breach was negligent rather than intentional, emotional distress damages are available only if the plaintiff proves "objective symptomatology." If the parties had a preexisting relationship, the availability of emotional distress damages turns generally on the

characteristics of the particular relationship. If the relationship was primarily economic, emotional distress damages may not be available. If the relationship was not primarily economic, emotional distress damages may be available.

*Id.* at 71 (footnotes omitted). The relationship in *Price* was between an adoption agency and prospective adoptive parents. *Id.* at 73. The Court of Appeals held that the relationship was "not merely economic, and a reasonable person standing in the defendant's shoes would easily foresee that its breach is likely to cause significant emotional distress." *Id.*

Other jurisdictions consider the foreseeability of emotional distress when deciding whether to award emotional distress damages. *See* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 53 cmt. g at 393 (2000) ("General principles applicable to the recovery of damages for emotional distress apply to legal-malpractice actions. In general, such damages are inappropriate in types of cases in which emotional distress is unforeseeable. Thus, emotional-distress damages are ordinarily not recoverable when a lawyer's misconduct causes the client to lose profits from a commercial transaction, but are ordinarily recoverable when misconduct causes a client's imprisonment.").

Many jurisdictions do not allow emotional distress damages for legal malpractice unless there has been an intentional act, egregious conduct, or physical injury. *See Vincent v. DeVries*, 2013 VT 34, 193 Vt. 574, 72 A.3d 886, 894-95. Other courts allow recovery when a "'lawyer is contracted to perform services involving deeply emotional responses in the event of a breach.'" *Id.* at 894-95 (quoting *Miranda v. Said*, noted at 820 N.W.2d 159, 2012 WL 2410945, at *4 (Iowa Ct. App. 2012)).

13

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

This has included cases in which "legal malpractice [led] to a loss of liberty or of one's child, as contrasted with purely pecuniary loss." *Id.* at 895.

For example, a Florida court created a narrow exception to its impact rule for certain legal malpractice claims. *Rowell v. Holt*, 850 So. 2d 474 (Fla. 2003). The exception applies when a harm is grievous and foreseeable. *See id.* at 478-81. The court held that a plaintiff could recover emotional distress damages when he "had been wrongfully arrested and confined" and had given his attorney the documents necessary to "secure his immediate release . . . ." *Id.* at 479. The attorney did not give the documents to the "judge as the judge had specifically instructed," and a lengthy period of wrongful confinement resulted. *Id.* at 479-80. The rule was narrow:

> The instant case does not simply involve negligence arising from insufficient preparation, incomplete investigation, legal ineptitude, or any other subjective indicia of a lawyer's performance. To obtain his client's release, [petitioner's] attorney . . . needed only to deliver, transmit, or hand over to the judge the document which he had been provided and which he held in his hands.

*Id.* at 481. The exception created by the Florida court follows the national trend of allowing emotional distress damages when the attorney's actions are particularly egregious and the harm is both great and foreseeable.

Having examined Washington law and explored the rule in other jurisdictions, we hold that emotional distress damages are available for attorney negligence when emotional distress is foreseeable due to the particularly egregious (or intentional) conduct of an attorney or the sensitive or personal nature of the representation. Here, the facts do not warrant damages for emotional distress. Schmidt experienced a pecuniary loss when Coogan negligently failed to perfect her personal injury lawsuit,

14

*Schmidt v. Coogan et ux. et al.*, No. 88460-9

and this lawsuit compensates her for that loss. Additionally, the subject matter of the litigation was not particularly sensitive: she did not lose her freedom and Coogan's actions were not egregious. Therefore, we affirm the trial court's rulings concerning the availability of general and emotional distress damages.

The dissent misreads our opinion and accordingly expends considerable energy defeating an imaginary straw man. The dissent accuses us of "[i]nsisting that emotional distress damages require a showing that the attorney's actions were 'particularly egregious,'" dissent at 1.[3] We have quite clearly said that egregious action is *one* way of establishing a claim for emotional distress damages: "emotional distress damages are available for attorney negligence when emotional distress is foreseeable due to the particularly egregious (or intentional) conduct of an attorney or the sensitive or personal nature of the representation." *Supra* p. 14; *accord supra* p. 10. In other words, egregious action is sufficient, but not necessary.

The dissent urges that the attorney-client relationship should lead us to conclude that emotional distress damages are available without proof of physical impact or objective symptomatology. Dissent at 3. Nothing in this opinion requires either impact or symptomatology.

The dissent criticizes our characterization of Schmidt's harm as primarily pecuniary, citing testimony from the underlying trial. *Id.* This is another misreading of

---

[3] We do not understand the dissent's accusation that our opinion "discounts the special nature of the attorney-client relationship and relies on a faulty analogy between attorney malpractice claims and negligent infliction of emotional distress . . . claims involving strangers." Dissent at 1. Unlike the dissent, we have considered out-of-state authorities and a leading treatise on lawyers, all analyzing this very issue in the context of lawyering. It is the dissent that ranges far afield of the attorney-client relationship.

15

our opinion. Two types of emotional distress damages are involved here: Schmidt's emotional distress caused by her underlying injury and Schmidt's emotional distress caused by defendant-attorney Coogan. The emotional distress damages at issue in this appeal are the emotional distress damages caused by Coogan, not the damages caused by her fall in the grocery store. The dissent cites only to emotional distress caused by the grocery store fall, which does not support a conclusion that it is foreseeable that Coogan's malpractice might cause emotional distress damages to Schmidt. *Id.*

The dissent argues that we should analogize legal malpractice claims against attorneys to insurance bad faith cases in order to determine the recoverability of emotional distress damages. *Id.* This argument places the cart before the horse in that we have never before addressed the availability of emotional distress damages for insurance bad faith, and the dissent cites only one case asserting without analysis that emotional distress damages are recoverable for insurance bad faith. *See* dissent at 5 (citing *Miller v. Kenny*, 180 Wn. App. __, 325 P.3d 278, 293 (2014) (citing *Anderson v. State Farm Mut. Ins. Co.*, 101 Wn. App. 323, 333, 2 P.3d 1029 (2000))). *Anderson* simply cites to *Coventry Assocs. v. American States Insurance Co.*, 136 Wn.2d 269, 961 P.2d 933 (1998). Neither *Miller* nor *Anderson* actually analyzes emotional distress damages. They simply say that insurance bad faith is a tort, and therefore emotional distress damages are available. *Miller*, 325 P.3d at 293; *Anderson*, 101 Wn. App. at 333. *Coventry* simply says that general tort damages are available for insurer bad faith. 136 Wn.2d at 285. In other words, the dissent relies on three bad faith cases that fail to analyze the availability of emotional distress

16

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

damages in the context of insurance bad faith, and that say nothing about legal malpractice.

Moreover, attorney malpractice differs considerably from insurer bad faith.[4] We have not articulated a sufficiently narrow definition of insurance bad faith to use it as a model to determine attorney malpractice. *See, e.g., Tank v. State Farm Fire & Cas. Co.,* 105 Wn.2d 381, 386, 715 P.2d 1133 (1986) ("an insurer must deal fairly with an insured, giving equal consideration *in all matters* to the insured's interests"); *Smith v. Safeco Ins. Co.,* 150 Wn.2d 478, 484, 78 P.3d 1274 (2003) ("To succeed on a bad faith claim, the policyholder must show the insurer's breach of the insurance contract was 'unreasonable, frivolous, or unfounded'" (quoting *Overton v. Consol. Ins. Co.,* 145 Wn.2d 417, 433, 38 P.3d 322 (2002))); *Besel v. Viking Ins. Co. of Wisconsin,* 146 Wn.2d 730, 737, 49 P.2d 887 (2002) ("The[se] principles . . . do not depend on how an insurer acted in bad faith. Rather, the principles apply whenever an insurer acts in bad faith, whether by poorly defending a claim under a reservation of rights, refusing to defend a claim, or failing to properly investigate a claim." (citations omitted)). Additionally, insurance bad faith does not constitute a single body of law; it "derives from statutory and regulatory provisions, and the common law." *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.,* 165 Wn.2d 122, 128, 196 P.3d 664 (2008). Insurance bad faith

---

[4] The negligence basis for attorney malpractice and the bad faith standard are distinct theories of liability. *Coventry,* 136 Wn.2d at 280 (noting that "an insured is not entitled to base a bad faith or [Consumer Protection Act, chapter 19.86 RCW] claim against its insurer on the basis of a *good* faith mistake"); *First State Ins. Co. v. Kemper Nat'l Ins. Co.,* 94 Wn. App. 602, 612, 971 P.2d 1133 (1999) ("the plaintiff is entitled to a jury verdict on theories of either negligence or bad faith, *independent of each other* because a party may fail to use ordinary care yet still not act in bad faith" (footnote omitted)).

17

claims are often brought under common law, the Insurance Fair Conduct Act (ch. 48.30 RCW), and the Consumer Protection Act (ch. 19.86 RCW). Each of these causes of action offers unique remedies. *See* RCW 19.86.090 (attorney's fees available for Consumer Protection Act claims); RCW 48.30.015(2) (treble damages available for Insurance Fair Conduct Act claims); *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 318, 858 P.2d 1054 (1993) (emotional distress damages unavailable for Consumer Protection Act claims). Importing insurance bad faith standards into the arena of attorney malpractice will only cause confusion. The analogy between insurance bad faith and attorney malpractice must await a fuller exploration than either the dissent or the parties have offered.

Schmidt also argues that plaintiffs in legal malpractice claims should recover the cost of obtaining the malpractice award. She argues that it is within the scope of foreseeability that a client will incur additional attorney fees, expert fees, and other costs when an attorney commits malpractice. Schmidt offers no case law to support her position. In fact, our case law does not support an award of attorney fees in attorney malpractice cases. *Perez v. Pappas*, 98 Wn.2d 835, 845, 659 P.2d 475 (1983) (Our court rejected the client's argument that "a defendant is always liable for attorney fees when a lawsuit results from the defendant's breach of fiduciary duties." We held that the trial court properly refused to award attorney fees.); *Shoemake v. Ferrer*, 143 Wn. App. 819, 830-31, 182 P.3d 992 (trial court abused its discretion by awarding attorney fees to the injured client), *aff'd on different grounds*, 168 Wn.2d 193, 225 P.3d 990 (2010); *Kelly v. Foster*, 62 Wn. App. 150, 153-55, 813 P.2d 598 (1991) (trial court did not abuse its discretion when it denied attorney fees). Attorney

18

fees are not awarded to plaintiffs in other tort cases, including other forms of malpractice. *See Cosmo. Eng'g Grp., Inc. v. Ondeo Degremont, Inc.*, 159 Wn.2d 292, 296-97, 149 P.3d 666 (2006) ("The general rule in Washington, commonly referred to as the 'American rule,' is that each party in a civil action will pay its own attorney fees and costs. This general rule can be modified by contract, statute, or a recognized ground in equity." (citations omitted)); *Jaramillo v. Morris*, 50 Wn. App. 822, 826-27, 750 P.2d 1301 (1988) (court reversed attorney fee award because the claims concerned professional negligence/malpractice and were not a violation of the Consumer Protection Act). It would be anomalous to award attorney fees in this context but not in other tort cases.

The facts in *Shoemake* are similar to the facts of our case. The Shoemakes were seriously injured in a car accident, they hired an attorney to represent them, and the attorney failed to perfect the lawsuit before the statute of limitations ran. 143 Wn. App. at 821. The case was initially dismissed, but the attorney convinced the court to reinstate the claim. *Id.* at 821-22. He failed to appear for the scheduled trial, and the court dismissed the Shoemakes' complaint. *Id.* at 822. The attorney never told the Shoemakes about the events; instead, he lied to them for years. *Id.* The trial court awarded the Shoemakes attorney fees, but the Court of Appeals reversed the award. *Id.* at 823, 832. It rejected the argument that an injured client was entitled to attorney fees in a "malpractice action based on their breach of fiduciary duty claims." *Shoemake*, 143 Wn. App. at 830. "Attorney fees may be awarded only if authorized by contract, statute, or a recognized ground in equity." *Id.* The court concluded that "breach of fiduciary duty by a lawyer is not a recognized equitable ground upon which

19

to award attorney fees under Washington law, the trial court erred in [awarding attorney fees]." *Id.* The Court of Appeals also noted, "'Washington courts have not recognized the ordinary legal malpractice action as one in which attorney's fees can be recovered as part of the cost of litigation.'" *Id.* at 832 (quoting *Kelly*, 62 Wn. App. at 155). We denied review of the attorney fee award issue while accepting review of other issues. *Shoemake*, 168 Wn.2d at 197.

The approach taken by the court in *Shoemake* follows the rule as set out in the *Restatement*:

> Like other civil litigants, the winning party in a malpractice action ordinarily cannot recover its attorney fees and other expenses in the malpractice action itself, except to the limited extent that the jurisdiction allows the recovery of court costs. The rule barring fee recovery has exceptions, which may be applicable in a malpractice action in appropriate circumstances. For example, many jurisdictions allow recovery of attorney fees against a plaintiff or defendant that litigates in bad faith.

RESTATEMENT (THIRD) OF LAW GOVERNING LAWYERS § 53 cmt. f at 392-93. We hold that plaintiffs in legal malpractice cases are not automatically entitled to attorney fees.

None of the remaining issues presented by Schmidt are errors or merit discussion.[5]

_____

[5] The trial court did not err when it denied Schmidt's motion to amend to add a claim for outrage/reckless infliction of emotional distress. The Court of Appeals held, "[T]he trial court did not abuse its discretion in denying Schmidt's motion to amend her complaint because she sought to amend the complaint only after an undue delay and an amended complaint would have worked an undue hardship on Coogan's defense." *Schmidt*, 171 Wn. App. at 611-12. The court noted that the amendment was proposed "well over a decade after the alleged infliction of emotional distress occurred, and well after the first trial established Coogan's liability for negligence in failing to comply with the statute of limitations . . . ." *Id.* at 612. Allowing the amendment "would have broadened the trial's scope and forced Coogan to reformulate his defense strategies." *Id.* We agree. It was not an error to deny the motion to amend.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

## CONCLUSION

We reverse the Court of Appeals and affirm the trial court's judgment. We hold that the uncollectibility of an underlying judgment is an affirmative defense to legal malpractice that defendant-attorneys must plead and prove. We also hold that the trial court properly denied emotional distress damages because Coogan's actions were not particularly egregious, nor was the subject matter personal.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

21

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

_____
Wiggins, J.

WE CONCUR.


_____


_____


_____


_____


_____


_____

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 88460-9

FAIRHURST, J. (concurring)—I agree with the lead opinion that the Court

of Appeals should be reversed. However, I believe it is unnecessary and improper

for this court to hold that collectibility is an affirmative defense under the facts of

this case.[1] Rather than fashion new rules of law, I would simply affirm the trial

court's denial of Timothy P. Coogan's motion for judgment as a matter of law. I

would hold Coogan could not raise collectibility in the damages only trial because

Coogan (1) failed to expressly raise collectibility as an issue in the first jury trial and

(2) sought to exclude insurance evidence from the damages only trial.

This case has a long and tortured history. The events began almost 20 years

ago when Teresa Schmidt slipped and fell at a Tacoma grocery store on December

23, 1995. In January 1996, Schmidt retained attorney Coogan to handle her personal

injury suit against the store. In 2000, Schmidt filed this attorney malpractice suit

against Coogan for his failure to perfect her claim. In 2003, a jury entered a verdict

against Coogan for $32,000 in past economic damages and $180,000 for

---

[1] Also under the facts of this case emotional distress damages are not available.

1

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

noneconomic damages. Coogan moved for a new trial, remittitur, and reconsideration, claiming Schmidt failed to prove the grocery store had notice of the hazardous condition, a necessary element of the underlying claim. The trial court granted a new trial on the issue of damages only on the basis that Coogan was denied a fair trial.

Specifically, the court found that a new trial on damages was warranted because (1) Schmidt's counsel improperly promoted awarding punitive damages during closing arguments to the jury, (2) the damages were so excessive as to unmistakably indicate that the verdict must have been the result of passion and prejudice, (3) the verdict for noneconomic damages was not supported by the evidence, and (4) the trial court improperly allowed the lack of Schmidt's insurance testimony to be presented during the course of trial.

Both parties appealed the trial court's decision. *Schmidt v. Coogan*, noted at 134 Wn. App. 1055, 2006 WL 2556633. Schmidt claimed the trial court erred in overturning the jury's damage award. 2006 WL 2556633, at *1. Coogan claimed Schmidt failed to prove the elements of her underlying claim. *Id.* The Court of Appeals agreed with Coogan, reversing and remanding the case for dismissal. *Id.* On appeal, this court reversed the Court of Appeals decision, holding there was sufficient evidence to support the jury's verdict with respect to the underlying slip

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

and fall. *Schmidt v. Coogan*, 162 Wn.2d 488, 492, 173 P.3d 273 (2007). The court remanded for consideration on the remaining issues. *Id.* at 493.

On remand, the Court of Appeals affirmed the trial court order granting a new trial limited to the issue of damages. *Schmidt v. Coogan*, noted at 145 Wn. App. 1030, 2008 WL 5752059. The Court of Appeals found that the trial court did not abuse its discretion in granting a new trial on damages only because Schmidt proved no factual basis for the jury's award of $32,000 for past economic damages. 2008 WL 5752059, at *1. The Court of Appeals mandated the case back to the trial court for a new trial on damages. *Id.*

On remand for the damages only trial, Coogan sought to confine Schmidt's damages to "what [Schmidt would] have gotten in her claim against the Grocery Outlet" if Coogan had done his job properly. Verbatim Report of Proceedings Motion in Limine (Aug. 20. 2010) at 21. Pretrial, Coogan never directly briefed or argued the issue of collectibility. Coogan alleges he raised collectibility in a motion contesting Schmidt's motion for summary judgment on the issue of general damages by discussing *Lavigne v. Chase, Haskell, Hayes & Kalamon, PS*, 112 Wn. App. 677, 50 P.3d 306 (2002) and by quoting and attaching an 86 page article in support of his motion in limine on the issue of general damages.

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Neither reference was focused on collectibility. Coogan was arguing that Schmidt's damages should be limited to actual damages. During the pretrial proceedings, Coogan never directly stated that collectibility was a necessary element of Schmidt's case. To the contrary, Coogan affirmatively moved for and the trial court granted a motion in limine that excluded a reference to the grocery store's insurance.

The first time Coogan expressly raised collectibility was in an oral motion to dismiss following the completion of Schmidt's case-in-chief during the damages only trial. 3 Verbatim Tr. of Proceedings (Aug. 25, 2010) at 503-04. His counsel stated:

> One element in a legal malpractice case is proof that if, in fact, the lawyer had done a better job and there would have been a better result, that they actually wouldn't have been able to collect on that result. In other words, collectability is an essential element of the plaintiff's case.
>
> There has been no evidence presented in this case, none whatsoever, as to whether or not even if Mr. Coogan had handled this case right, even if Mr. Coogan had taken it to a jury trial and got a verdict for Ms. Schmidt that that verdict would have been collectible. That is an essential element of their case, they put on no proof; therefore, dismissal is warranted.

*Id.* at 504.

The trial court then asked Coogan's counsel whether collectibility is an element of malpractice or a component of damages. *Id.* at 507. Counsel responded:

> Element two, proximate cause is what I'm talking about here.
> They're still going to have to prove proximate cause of damages. And
> in this context, [Schmidt] has to prove that but for his negligence, she
> would have faired [sic] better. An element of that concept and that goes
> to the value of the underlying claim. An element of that concept is the
> plaintiff's burden of proof collectability.

*Id.* The trial court denied the motion to dismiss, finding that collectibility was

outside the scope of the damages only trial: "[T]his case is not about any element of

malpractice other than damages and proximate cause as it relates to damages. If there

was a question as to collectability, that should have been addressed at the first trial.

This trial is about damages only." *Id.* at 508.

In August 2010, the jury returned a verdict in favor of Schmidt for $3,733.16

in past economic damages and $80,000.00 in noneconomic damages. Coogan

moved for judgment as a matter of law and for a new trial on the basis that Schmidt

failed to prove collectibility, an essential element of a legal malpractice claim. The

trial court denied the motions.

Coogan appealed, claiming the trial court erred by denying his motion for

judgment as a matter of law. The Court of Appeals reversed the trial court's denial

of Coogan's motion for judgment as a matter of law and remanded for dismissal of

Schmidt's claim. *Schmidt v. Coogan*, 171 Wn. App. 602, 611, 287 P.3d 681 (2012).

The court first determined Coogan preserved the issue of collectibility for appeal,

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

reasoning collectibility is a component for damages. *Id.* at 609. Further, the court held that Schmidt failed to prove collectibility. *Id.* at 611.

I believe the trial court properly denied Coogan's motion for judgment as a matter of law. First, Coogan did not expressly raise collectibility as an issue in the first trial. He raised it when this case was almost 15 years old and after there had been multiple appellate reviews. If collectibility was an issue, it should have been raised during the first jury trial. If collectibility had been argued successfully in the first trial, there would have been a defense verdict and the case would have been over. I would hold, as the trial court did, that the claim of collectibility had no place in the damages only trial.

Second, collectibility was not at issue in the damages only trial because during pretrial proceedings Coogan moved to exclude evidence of the grocery store's insurance. To support the exclusion of insurance information, among other exhibits, Coogan reasoned,

> a number of these exhibits are now irrelevant given the fact that this case is now limited to a new trial on the issues of damages only. In other words, any exhibit submitted by the plaintiff that relates to liability should be excluded as generally being irrelevant . . . as well as unduly confusing and prejudicial.

Resp't's Mot. for Recons. (of Court of Appeals decision, filed Nov. 16, 2012), App. at 22. Specifically, Coogan objected to "**Exhibit 1. Cover of Coogan's file**

6

**regarding Ms. Schmidt;** this exhibit is objected to on the grounds that it clearly depicts the words 'Safeco' on its cover thus inappropriately references insurance which as discussed above is inadmissible." *Id.* Schmidt demurred, and the trial court granted the motion in limine.

Coogan's motion in limine evidences that at the beginning of the damages only trial, he did not consider insurance relevant. However, insurance would be relevant if collectibility was an issue. Under the invited error doctrine, Coogan waived the right to complain of the fact that Schmidt did not present any evidence of collectibility. The invited error doctrine prohibits a party from setting up an error in the trial court and then complaining about it on appeal. *In re Pers. Restraint of Tortorelli*, 149 Wn.2d 82, 94, 66 P.3d 606 (2003). Here, Coogan moved to exclude the exact type of evidence that he later claimed Schmidt had to present in order to prevail in her case.

I would reverse the Court of Appeals and hold that collectibility was not at issue in the damages only trial because it was not raised during the first jury trial and Coogan invited error by moving to exclude evidence of insurance during the damages only trial. Although there may be unanswered questions about collectibility, this case is not the proper vehicle to decide them.

*Schmidt v. Coogan*, No. 88460-9
Fairhurst, J. (concurring)

Fairhurst, J.

Gordon McCloud, J.

J.M. Johnson, J.P.T.

Madsen, C.J.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Schmidt v. Coogan, et ux., et al.*

No. 88460-9

STEPHENS, J. (dissenting)—The attorney-client relationship is vital to the functioning of our justice system. The lead opinion erodes the trust that is central to this relationship by erecting artificial barriers to a client's ability to fully recover damages against a negligent attorney. Insisting that emotional distress damages require a showing that the attorney's actions were "particularly egregious," lead opinion at 14, the lead opinion discounts the special nature of the attorney-client relationship and relies on a faulty analogy between attorney malpractice claims and negligent infliction of emotional distress (NIED) claims involving strangers. It would make more sense to analogize attorney malpractice claims to tort claims in other fiduciary contexts more closely resembling the attorney-client relationship. Because such damages should be allowed, where proved, I respectfully dissent.[1]

The lead opinion begins its analysis by discussing claims between strangers and noting that historically, Washington courts were cautious to award emotional

---

[1] I agree with the lead opinion that collectability is an affirmative defense, not an element of every plaintiff-client's case. Lead opinion at 4. This dissent addresses only the issue of emotional distress damages in attorney malpractice cases.

distress damages. Lead opinion at 9. This reasoning relies on the refrain that "a negligent act should have some end to its legal consequences." *Hunsley v. Giard*, 87 Wn.2d 424, 435, 553 P.2d 1096 (1976). But, Washington has moved away from the reasoning of *Hunsley* and allows recovery "when a plaintiff's emotional distress is 'within the scope of foreseeable harm . . . , a reasonable reaction given the circumstances, and . . . manifest by objective symptomology.'" Lead opinion at 11 (alterations in original) (quoting *Bylsma v. Burger King Corp.*, 176 Wn.2d 555, 560, 293 P.3d 1168 (2013)).

As the lead opinion acknowledges, there are numerous circumstances where the State's interest in protecting members of the public supersedes any reluctance to recognize valid emotional distress and does not require a physical impact or "objective symptomology." Lead opinion at 10-11 (citing *Chuong Van Pham v. Seattle City Light*, 159 Wn.2d 527, 533-38, 151 P.3d 976 (2007) (emotional distress damages available for ethnic and race discrimination under Washington's Law Against Discrimination, ch. 49.60 RCW); *Berger v. Sonneland*, 144 Wn.2d 91, 113, 26 P.3d 257 (2001) (emotional distress damages available for medical malpractice); *Whaley v. State*, 90 Wn. App. 658, 674, 956 P.2d 1100 (1998) (emotional distress damages for breach of professional duty by a day care provider)). These situations reveal a common thread justifying the imposition of liability for emotional distress: a special relationship based on trust. When such a special relationship exists,

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

> [i]t is not merely economic, and a reasonable person standing in the defendant's shoes would easily foresee that its breach is likely to cause significant emotional distress. It will support emotional distress damages without proof of physical impact or objective symptomatology.

*Price v. State*, 114 Wn. App. 65, 73, 57 P.3d 639 (2002). In *Price* the court held that emotional distress damages were available against an agency that negligently facilitated a wrongful adoption. We should recognize that the attorney-client relationship is similarly a special relationship.

Instead, the lead opinion places a new restriction on plaintiffs alleging legal malpractice: they must prove the attorney's negligence was "particularly egregious." Lead opinion at 9. "Egregious" means "[e]xtremely or remarkably bad." BLACK'S LAW DICTIONARY 629 (10th ed. 2014). The lead opinion provides no additional guidance on how plaintiffs might show this. Yet, the lead opinion holds as a matter of law that Coogan's actions were not egregious. Lead opinion at 14-15. Coogan failed to file a personal injury lawsuit against the correct defendant before the statute of limitations ran. Schmidt repeatedly inquired about the case, and Coogan ridiculed her for not trusting him. These actions look "remarkably bad" to me.

The lead opinion also characterizes Schmidt's harm as primarily pecuniary, though her testimony at trial suggested that her personal injury has materially affected every aspect of her life. *Id.* at 15-16; Pet'r's Suppl. Br. App. at 22-36. The authorities the lead opinion cites to draw a dividing line between negligence that foreseeably causes emotional distress and negligence that produces only economic losses do not support cutting off Schmidt's emotional distress damages.

Lead opinion at 12-13 (citing *Vincent v. DeVries*, 2013 VT 34, 193 Vt. 574, 72 A.3d 886, 894-95 (2013); RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 53 cmt. g (1998)). Rather, they speak to *commercial* transactions or purely pecuniary losses. A personal injury involves much more. As the Court of Appeals recognized in *Price*, emotional distress damages are appropriate when negligence occurs in the context of a relationship preexisting the defendant's duty, i.e., within a special relationship. *Price*, 114 Wn. App. at 71.

There is a significant difference between the relationship of a tortfeasor and a bystander and between an attorney and a client. While a negligent driver might not foresee that his negligent driving will cause emotional distress to a stranger, an attorney handling a personal injury case can foresee that negligent performance might cause emotional distress to the client. Our NIED rule anticipates the tortfeasor/bystander scenario, and applies in the particular situation where a plaintiff "observ[es] an injured relative at the scene of an accident after its occurrence and before there is substantial change in the relative's condition or location." *Hegel v. McMahon*, 136 Wn.2d 122, 132, 960 P.2d 424 (1998). I do not see why the lead opinion chose to analogize this situation to the present case, where an attorney, who owes specified fiduciary duties to a client, violates those duties and causes both financial and emotional harm to the client.

A far better analogy is to torts involving special relationships. Consider, for example, insurance bad faith, which involves a quasi-fiduciary relationship. "An action for bad faith handling of an insurance claim sounds in tort." *Safeco Ins. Co.*

-4-

*of Am. v. Butler*, 118 Wn.2d 383, 389, 823 P.2d 499 (1992). "Claims of insurer bad faith 'are analyzed applying the same principles as any other tort: duty, breach of that duty, and damages proximately caused by any breach of duty.'" *Mut. of Enumclaw Ins. Co. v. Dan Paulson Constr., Inc.*, 161 Wn.2d 903, 916, 169 P.3d 1 (2007) (quoting *Smith v. Safeco Ins. Co.*, 150 Wn.2d 478, 485, 78 P.3d 1274 (2003)). Emotional distress damages are recognized in this context based on the relationship of trust between the insurer and insured. As the Colorado Supreme Court explained:

> [I]nsurance contracts are unlike ordinary bilateral contracts. First, the motivation for entering into an insurance contract is different. Insureds enter into insurance contracts for the financial security obtained by protecting themselves from unforeseen calamities and for peace of mind, rather than to secure commercial advantage. Second, there is a disparity of bargaining power between the insurer and the insured; because the insured cannot obtain materially different coverage elsewhere, insurance policies are generally not the result of bargaining.

*Goodson v. Am. Standard Ins. Co. of Wis.*, 89 P.3d 409, 414 (Colo. 2004) (citations omitted); *see also Miller v. Kenny*, 180 Wn. App. 722, 802, 325 P.3d 278 (2014) (explaining that tort damages for insurance bad faith in Washington include emotional distress damages).

Many of the same characteristics are equally prominent in the attorney client relationship. People turn to attorneys to help them recover after calamities occur. People hire attorneys for the peace of mind that comes from having the assistance of a professional, rather than facing a lawsuit alone. Attorneys inherently have more bargaining power than their clients when entering into a contract for service,

if for no other reason than such contracts are legal documents; laypeople hire attorneys primarily because they need assistance to understand the legal consequences of events and documents.

These considerations appear in this case as well. Schmidt suffered significant injuries from an unexpected slip and fall at a grocery store. Lead opinion at 1; Pet'r's Suppl. Br. App. at 12-34. These injuries interfered with her relationships and work. Pet'r's Suppl. Br. App. at 12-34. She sought legal counsel because she needed professional assistance in order to bring her claims. *Id.* at 40-41. Coogan prepared a contingency fee arrangement without any bargaining with Schmidt. *Id.* at 39-40. There is no evidence in the record to suggest that Schmidt had a realistic chance of finding a substantially different arrangement with another attorney. *See Goodson*, 89 P.3d 409. And, Schmidt continued relying on Coogan because she trusted him. Pet'r's Suppl. Br. App. at 55. Certainly the relationship between attorney and client here was no less one of trust than the insurer/insured relationship. The lead opinion offers no justification for cutting off the emotional distress damages in this true fiduciary relationship when an insured would be entitled to pursue such damages against a negligent insurer in a quasi-fiduciary relationship.

In the end, the lead opinion's rule rests on the wrong analogy, that of NIED claims between strangers. It reflects nothing more than a judicial determination that emotional distress damages are unforeseeable in this context. The proffered rationale for erecting a barrier to recovery is the lead opinion's conclusion that

For the current opinion, go to http://www.lexisnexis.com/clients/wareports/.

Schmidt suffered merely a "pecuniary loss" and that the subject matter of her personal injury suit "was not particularly sensitive" because "she did not lose her freedom and Coogan's actions were not egregious." Lead opinion at 14. Given that other classes of fiduciaries and quasi-fiduciaries do not receive the special protections that attorneys do under the lead opinion's rule, I find this unsatisfying. The special relationship between attorneys and their clients should not shield attorneys whose malpractice foreseeably causes emotional distress. Rather, the special relationship should allow for greater recovery because of the greater harm that a negligent attorney may inflict upon a trusting client. I respectfully dissent.

For the current opinion, go to http://www.lexisnexis.com/clients/wareports/.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Stephens, J.

González, J.