IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| MARIYA TARASYUK, | ) | No. 32389-7-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| MUTUAL OF ENUMCLAW | ) | |
| INSURANCE COMPANY, and JOHN | ) | |
| DOE, | ) | |
| | ) | |
| Respondents. | ) | |

LAWRENCE-BERREY, J. — The trial court granted Mutual of Enumclaw Insurance Company's (Enumclaw) motion for summary judgment, and dismissed all of Mariya Tarasyuk's claims against her insurer. Ms. Tarasyuk claims that genuine issues of material fact preclude summary judgment on all of her claims. We agree and reverse.

## FACTS

On January 11, 2011, Anna Mosesova of the Harvey-Monteith Insurance Agency assisted Ms. Tarasyuk in applying for insurance coverage. The agency directed Ms. Tarasyuk to Ms. Mosesova because they both spoke Russian. Ms. Tarasyuk could not read or write in English, and her ability to speak the language was limited. The

application asked whether any business was conducted on the premises, which was answered "no." Clerk's Papers (CP) at 178. Both Ms. Tarasyuk and Ms. Mosesova signed the application.

The same day, Ms. Tarasyuk purchased a homeowners' policy from Enumclaw. The policy included a small amount for structures on the property other than the home. The policy included the clause, "**We do not cover** other structures: . . . used in whole or in part for "**business**." CP at 38. The policy included a definition for "business" as "includes trade, profession or occupation." CP at 36.

Another one of Enumclaw's agents, Craig Baumgartner, inspected the property and took photographs of the home and the additional structures, including a large shed on the property. Mr. Baumgartner noticed the saw, tools, and equipment in the area of the shed and inquired about its use. He was told by someone on the property that the shed was used to repair vehicles or boats belonging to friends and family members.

After the pictures were taken, Ms. Mosesova asked Ms. Tarasyuk if she had a car repair business and if the repairs occurred in the shed. Ms. Tarasyuk said that she repaired cars, but not many, and that most of the repairs were for friends. She said that they did not repair anything in the shed. Ms. Tarasyuk said repairing cars was more like a hobby. Ms. Tarasyuk also told Ms. Mosesova that if Ms. Mosesova needed a car fixed

2

that she should bring it over. According to Ms. Tarasyuk's deposition, she could not remember if Ms. Mosesova asked about earning money from the repairs, but if such a question was asked, Ms. Tarasyuk would have said "yes." CP at 279.

On January 14, 2011, Enumclaw's underwriter, Jill Anfinson, requested photographs of Ms. Tarasyuk's property, including the front and back of the house and all outbuildings. On January 19, Ms. Mosesova sent Ms. Anfinson four photographs. In the e-mail, Ms. Mosesova noted that there was a large detached garage on the property, probably referring to the large shed. However, Ms. Mosesova did not include pictures of the shed. After checking the Internet site Zillow and reading Ms. Mosesova's comment, Ms. Anfinson asked about the shed and its dimensions and requested photographs of the structure.

One month later, Ms. Anfinson still had no pictures of the shed. She informed Ms. Mosesova that the policy would be declined if she did not receive pictures of the shed. Ms. Mosesova sent Ms. Anfinson two additional photographs of the shed. The photographs did not show the car activities and were not the same size as the prior pictures, although they were taken with the same camera. Ms. Anfinson advised Ms. Mosesova that an additional $60,000 in coverage was needed to insure the 1,200 square foot shed. Enumclaw amended the policy to add this additional coverage for "other

3

structures." CP at 223. Ms. Tarasyuk's premiums increased to account for the additional

coverage.

On August 19, 2011, Ms. Tarasyuk's shed burned down due to an electrical fire,

and the shed was deemed a total loss. Enumclaw investigated and discovered that Ms.

Tarasyuk had a business license for the car repair operation and used the shed to store

tools and repair manuals for the business. Enumclaw denied coverage for the shed,

concluding that the shed was being used in whole or part for the auto repair business.

Ms. Tarasyuk filed an action against Enumclaw based on its failure to cover the

loss of the shed. She alleged breach of contract; violation of the Consumer Protection

Act (CPA), chapter 19.86 RCW; violation of the Insurance Fair Conduct Act (IFCA),

RCW 48.30.010-.015; breach of the duty of good faith, and estoppel from denial of

coverage.

Both parties filed motions for summary judgment. Enumclaw presented evidence

that Ms. Tarasyuk was conducting business in the shed. This evidence included a

business license that Ms. Tarasyuk obtained for the car repair operation in mid-2010. The

license indicated that a 1,200 square foot detached building was to be used for the

business. Enumclaw also presented an advertisement for the business, complaints from

neighbors in 2011 regarding business operation on the property, 2010 and 2011 tax forms

4

that listed income from the business, and Ms. Tarasyuk's insurance claim form where she categorized several items lost in the fire as business property. In her deposition, Ms. Tarasyuk claimed that they originally sought to start a business but that it failed. Ms. Tarasyuk admitted that she kept business records in the shed. She also admitted that she reported income for auto repair on her 2010 and 2011 tax forms.

In response and in support of her own summary judgment motion, Ms. Tarasyuk claimed that Enumclaw's agents knew of the car repair operation and either did not consider it a business use when she entered into the contract, or fraudulently misrepresented the coverage and collected premiums knowing that the policy did not cover the shed. Ms. Tarasyuk presented the deposition of Enumclaw's agents showing knowledge of the repair business. In Ms. Mosesova's deposition testimony, she admitted discussing the repair business with Ms. Tarasyuk, and that Ms. Tarasyuk said she repaired vehicles for family and friends only. Mr. Baumgartner also testified that he asked about the business and noticed the business activity outside the shed.

To show that the use of the shed was obvious to agents Ms. Mosesova and Mr. Baumgartner, Ms. Tarasyuk presented evidence that she had a sign right outside the shed that advertised the repair business, and that this sign was on the property both before and after Mr. Baumgartner took his pictures. Mr. Baumgartner remembered taking a picture

of the front of the shed. However, the pictures given to Enumclaw by Ms. Mosesova were altered and the sign was not shown.

Ms. Tarasyuk also presented a declaration from a photographic expert who determined that the agents did not turn over all of the pictures to the insurance underwriter and the pictures that were turned over were cropped. The expert noted that three pictures in the sequence were missing. However, in Enumclaw's investigation notes, Ms. Mosesova denied having any other photographs of the property other than the ones sent to Enumclaw.

Ms. Tarasyuk offered evidence that Enumclaw questioned whether the business was deliberately being concealed. An e-mail sent during the investigation by Enumclaw Underwriter Patricia Boyles noted that "photos provided by the agency appear to have deliberately not show[n] front & all of the boat/vehicles parked there." CP at 251. She also presented deposition testimony from Ms. Boyles that she questioned whether whoever took the picture had chosen not to provide a photograph of the front of the shed and all of the vehicles parked there. Ms. Boyles said the local agency has authority to bind Enumclaw.

The trial court granted Enumclaw's motion for summary judgment and dismissed all of Ms. Tarasyuk's claims. The court denied Ms. Tarasyuk's motion for summary

judgment and subsequent motion for reconsideration. The court concluded that Enumclaw was not required to cover damage to the shed, finding that substantial factual evidence established Ms. Tarasyuk's business use of the building. The court also held that the general duty of care which an insurance agent owes her client does not include the general obligation to procure a policy that gives the client complete liability protection.

## ANALYSIS

This court reviews a summary judgment order de novo. *Lunsford v. Saberhagen Holdings, Inc.*, 166 Wn.2d 264, 270, 208 P.3d 1092 (2009) (quoting *City of Spokane v. Spokane County*, 158 Wn.2d 661, 671, 146 P.3d 893 (2006)). When reviewing a summary judgment order, the appellate court engages in the same inquiry as the trial court, viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Riojas v. Grant County Pub. Util. Dist.*, 117 Wn. App. 694, 697, 72 P.3d 1093 (2003). Summary judgment is appropriate only if the moving party can show that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). "A material fact is one upon which the outcome of the litigation depends in whole or in part." *Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990).

Summary judgment on the interpretation of a contract is "proper where 'the parties' written contract, viewed in the light of the parties' other outward objective manifestations, has only one reasonable meaning.' " *Spradlin Rock Prods., Inc. v. Pub. Util. Dist. No. 1 of Grays Harbor County*, 164 Wn. App. 641, 655, 266 P.3d 229 (2011) (quoting *Hall v. Custom Craft Fixtures, Inc.*, 87 Wn. App. 1, 9, 937 P.2d 1143 (1997)). Where there are no disputed material facts and no extrinsic evidence presented on the issue, "the meaning of a contract may be decided as a matter of law." *Snohomish County Pub. Transp. Benefit Area Corp. v. FirstGroup Am., Inc.*, 173 Wn.2d 829, 834, 271 P.3d 850 (2012). "[T]he interpretation of an unambiguous contract is a question of law" that we review de novo. *Stranberg v. Lasz*, 115 Wn. App. 396, 402, 63 P.3d 809 (2003).

*1.     Whether, as a matter of law, Enumclaw had no duty to cover the shed*

Ms. Tarasyuk contends that the trial court erred in granting summary judgment because it misinterpreted the ambiguous term "business use" and concluded that her property was not covered. Ms. Tarasyuk maintains that "business use" did not include the car repair activity because the intent of the contract was to cover the shed, the agents were aware of the minimal repair work done for family and friends, and the repair work occurred outside the shed.

"A breach of contract is actionable only if the contract imposes a duty, the duty is breached, and the breach proximately causes damage to the claimant." *Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus.*, 78 Wn. App. 707, 712, 899 P.2d 6 (1995). Ms. Tarasyuk's challenge to the insurance contract essentially has two parts. Her first challenge addresses Enumclaw's duty based on the interpretation of the contract and the intent expressed therein. Her second challenge addresses duty as well as breach and involves Enumclaw's decision to deny coverage based on the use of the shed and the location of business activity. The question is whether Enumclaw had a duty to cover the shed and did it breach that duty when it denied coverage. The first challenge involves a question of law, whereas the second involves a question of fact.

Washington follows the objective manifestation theory of contracts, looking for "the parties' intent by its objective manifestations rather than the parties' unexpressed subjective intent." *Paradiso v. Drake*, 135 Wn. App. 329, 336, 143 P.3d 859 (2006). Courts should consider "only what the parties wrote, giving words in a contract their ordinary, usual, and popular meaning unless the agreement, as a whole, clearly demonstrates a contrary intent." *Id.*

Courts interpret what was written rather than intended to be written. *J.W. Seavey Hop Corp. v. Pollock*, 20 Wn.2d 337, 348-49, 147 P.2d 310 (1944). Language that is

clear on its face does not need construction. *Cerrillo v. Esparza*, 158 Wn.2d 194, 201, 142 P.3d 155 (2006). Ambiguities are construed against the drafter of the contract. *Rouse v. Glascam Builders, Inc.*, 101 Wn.2d 127, 135, 677 P.2d 125 (1984).

Enumclaw's duty to Ms. Tarasyuk can be found within the terms of the contract. The intent of the parties in entering the contract was for Enumclaw to provide homeowners' insurance to Ms. Tarasyuk. The contract includes coverage for the house as well as the outbuildings. However, the contract limits Enumclaw's duty to insure. The contract clearly excludes coverage for buildings used in whole or part for business. Thus, the objective manifestation of the parties was to provide coverage for the house and outbuildings, except if used for business. This was Enumclaw's duty under the contract.

The second part of the inquiry is whether the shed was indeed being used for business and excluded from coverage. Business use of an outbuilding, as stated in the contract, includes trade, profession, or occupation. As a preliminary matter, there is no question that Ms. Tarasyuk's automobile repair activity is a business. She had a license for the business, she advertised, and she paid taxes on the income. Although the repair business was not her full time trade, profession, or occupation, there is no significant dispute that the repair activity was run as a business, even if just for the benefit of family and friends.

10

However, a genuine issue of material fact remains as to whether the *shed* was being used for Ms. Tarasyuk's business. Enumclaw claims that the shed was used for business because Ms. Tarasyuk had a business license and the shed was listed on the license application. However, Ms. Tarasyuk claimed that the work was completed outside the building. She presented competing evidence showing large repair equipment and vehicles outside the shed and the shed doors were too small to allow vehicles to enter the building. She also presented testimony that the shed was used for general storage, not for business use. Here, all reasonable inferences are to be drawn in favor of Ms. Tarasyuk, the nonmoving party. Thus, whether the business use exclusion applied to the shed is a disputed issue of fact to be decided by the trier of fact.

Summary judgment was not appropriate on the breach of contract claim. While we can decide as a matter of law that Enumclaw owed a duty to cover the house and outbuildings that were not used for business, a disputed issue of fact remains as to whether Ms. Tarasyuk used the shed for her business.

2.    *Whether, as a matter of law, Enumclaw complied with its duty of good faith*

"Insurance bad faith claims are often brought under common law, the [IFCA] and the [CPA]. Each of these causes of action offers unique remedies." *Schmidt v. Coogan,*

11

181 Wn.2d 661, 677, 335 P.3d 424 (2014). In her complaint, Ms. Tarasyuk raised all three causes of action. All three were dismissed on summary judgment.

In her common law claim for bad faith, Ms. Tarasyuk contends that the trial court used the wrong standard when it concluded that Enumclaw did not owe a duty of care to procure a policy that afforded Ms. Tarasyuk complete liability coverage. Ms. Tarasyuk contends that the duty is one of good faith. She maintains that Enumclaw did not act in good faith when it collected premiums for the shed knowing that it was used for business and then wrongfully denied coverage after the fire.

Insurers in Washington have a duty to act in good faith and deal fairly with their insured. *Smith v. Safeco Ins. Co.*, 150 Wn.2d 478, 484, 78 P.3d 1274 (2003). This duty of good faith for the insurance industry is required by statute:

> The business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters. Upon the insurer, the insured, their providers, and their representatives rests the duty of preserving inviolate the integrity of insurance.

RCW 48.01.030.

A violation of this duty gives rise to a common law tort cause of action for bad faith. *Smith*, 150 Wn.2d at 484. Like other torts, the elements for the bad faith claim are

duty, breach, causation, and damages. *Id.* at 485. "Whether an insurer acted in bad faith remains a question of fact." *Id.*

An insurer has a duty of good faith to all of its policyholders. *Id.* To succeed on a bad faith claim, a policyholder must show the insurer's actions were unreasonable, frivolous, or unfounded. *Id.* "To affirm [summary judgment,] there must be no disputed facts pertaining to 'the reasonableness of the insurer's action in light of all the facts and circumstances of the case.'" *Id.* at 486 (quoting *Indus. Indem. Co. of the NW, Inc. v. Kallevig*, 114 Wn.2d 907, 920, 792 P.2d 520 (1990)).

In actions where the insured claims that coverage was unreasonably denied, the insured has the initial burden of showing that the insurer acted unreasonably. *Id.* In response, the insurer has the opportunity to identify reasonable grounds for its action. *Id.* If reasonable minds could not differ that the denial was based on reasonable grounds, then summary judgment is appropriate in favor of the insurer. *Id.*

However, simply raising a theoretical reasonable basis for the insurer's conduct does not necessarily end the inquiry. *Id.* The insured may present evidence that the insurer's alleged reasonable basis was not the actual basis for its action, or that factors outweigh the alleged reasonable basis. *Id.* "If . . . reasonable minds could differ that the

13

insurer's conduct was reasonable, or if there are material issues of fact with respect to the reasonableness of the insurer's actions, then summary judgment is not appropriate." *Id.*

Here, the trial court based its denial on *Suter v. Virgil R. Lee & Son, Inc.*, 51 Wn. App. 524, 754 P.2d 155 (1988). *Suter* held that "'[t]he general duty of reasonable care which an insurance agent owes his client does not include the obligation to procure a policy affording the client complete liability protection.'" 51 Wn. App. at 528 (quoting *Jones v. Grewe*, 189 Cal. App. 3d 950, 956, 234 Cal. Rptr. 717 (1987)). We agree with Ms. Tarasyuk that this was not the appropriate standard to apply to her bad faith claim. Ms. Tarasyuk's claim is not based on the adequacy of the coverage. Instead, her claim is based on the reasonableness of Enumclaw's actions and whether she was treated fairly.

Summary judgment was not appropriate based on Enumclaw's duty to act in good faith. Ms. Tarasyuk met her burden of showing that Enumclaw breached this duty and acted in bad faith by leading her to believe that the shed was covered under the policy to collect premiums. She maintains that the bad faith occurred in one of two ways: (1) Enumclaw accepted premiums for the shed knowing that it would not be covered and subsequently denied coverage or, alternatively, (2) Enumclaw accepted premiums for the shed because it did not find Ms. Tarasyuk was using the shed for business, and then changed its interpretation after the fire and denied coverage of the shed. In either case,

she maintains that Enumclaw acted unreasonably when it denied coverage after it was aware of the shed's use and collected the premiums.

Both of the scenarios involve disputed facts concerning Enumclaw's knowledge and actions. Mr. Tarasyuk claims that Ms. Mosesova and Mr. Baumgartner knew, or reasonably should have known, how the shed was being used. According to Enumclaw's investigation notes, both agents suspected business use after the property was inspected. Additionally, Ms. Tarasyuk told Ms. Mosesova about her business after Ms. Mosesova inquired about the use of the shed. Even with this knowledge, Enumclaw insured the shed and required an additional premium due to the size of the shed.

Ms. Tarasyuk also presented evidence that showed an intent by Enumclaw's agents to conceal the use of the shed to the underwriter. Ms. Mosesova delayed sending pictures to Enumclaw's underwriter and, when she did finally send them, they were altered. Even Enumclaw's underwriter suspected that someone altered the pictures so the boats and cars were not shown.

In response, Enumclaw contends that it did not act in bad faith because Ms. Tarasyuk told the local agents that the shed was not used for business purposes and the denial was reasonably based on the business use. Furthermore, Enumclaw contends that its actions were reasonable because it did not have a responsibility to investigate Ms.

15

Tarasyuk's use of the property. Enumclaw maintains that the shed was always covered, just not for business use.

Resolution of these factual disputes is necessary to Ms. Tarasyuk's bad faith claim. Whether Enumclaw knew of the particular use prior to collecting premiums or changed its position on the use when it denied coverage are disputed issues of material fact crucial for determining reasonableness. The reasonableness of Enumclaw's actions is to be determined in light of all the facts and circumstances of the case. Because of the disputed material facts, summary judgment was not appropriate.

The parties dispute whether estoppel applies to Ms. Tarasyuk's claim. Estoppel does not operate to create coverage in an existing contract that is contrary to the express provisions of that contract. *Carew, Shaw & Bernasconi v. Gen. Cas. Co. of Am.*, 189 Wash. 329, 336, 65 P.2d 689 (1937). However, when an insurer acts in bad faith, the remedy is compensation for the injury caused and estoppel to policy defenses. *Ledcor Indus., Inc. v. Mut. of Enumclaw Ins. Co.*, 150 Wn. App. 1, 10, 206 P.3d 1255 (2009).

> "When the insurer breaches the duty to defend in bad faith, the insurer should be held liable not only in contract for the cost of the defense, but also should be estopped from asserting the claim is outside the scope of the contract and, accordingly, that there is no coverage. The coverage by estoppel remedy creates a strong incentive for the insurer to act in good faith, and protects the insured against the insurer's bad faith conduct."

16

*Id.* (quoting *Kirk v. Mount Airy Ins. Co.*, 134 Wn.2d 558, 564, 951 P.2d 1124 (1998)).

"The insurer acting in bad faith forfeits defenses to the claim tendered and handled in bad faith, including the defense that the claim was never covered at all." *Id.* (emphasis omitted). Hence, if bad faith is found, Enumclaw would be estopped from asserting the claim is outside the scope of the insurance coverage.

The trial court erred when it determined as a matter of law that Enumclaw did not violate a duty of good faith when it sold Ms. Tarasyuk the policy and declined coverage. Enumclaw owed Ms. Tarasyuk a duty of good faith. Material issues of fact remain as to whether it acted reasonably in denying the claim.

3.      *Whether material facts preclude dismissal of Ms. Tarasyuk's CPA claim*

The CPA provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW 19.86.020. The purposes of the CPA are "to protect the public and foster fair and honest competition." RCW 19.86.920. To accomplish these purposes, the CPA is to be liberally construed. RCW 19.86.920. In a citizen-initiated CPA suit, the following five elements must be proven: "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his business or property;

17

(5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986).

As previously stated, RCW 48.30.010 prohibits unfair practices and deceptive acts for those engaged in the business of insurance. A violation of RCW 48.30.010 is per se an unfair trade practice and satisfies the first element of the five-part test for bringing a CPA action. *Kallevig*, 114 Wn.2d at 920-21. A violation of RCW 48.30.010 can be determined by a violation of any of the 19 types of conduct listed in WAC 284-30-330. *Anderson v. State Farm Mut. Ins. Co.*, 101 Wn. App. 323, 332, 2 P.3d 1029 (2000).

WAC 284-30-330 lists conduct determined to be unfair or deceptive acts or practices in the business of insurance, specifically applicable to the settlement of claims. Applicable here are the practices of WAC 284-30-330: (1) Misrepresenting pertinent facts or insurance policy provisions, (6) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear, and (7) Compelling a first party claimant to initiate or submit to litigation, arbitration, or appraisal to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in such actions or proceedings.

18

As in a bad faith claim, a reasonable basis for denial of an insured's claim constitutes a complete defense to any claim that the insurer violated the CPA. *Coventry Assocs. v. Am. States Ins. Co.*, 136 Wn.2d 269, 280, 961 P.2d 933 (1998).

For the first element of Ms. Tarasyuk's CPA claim, a question of fact exists as to whether Enumclaw's actions were deceptive and in violation of RCW 48.30.010. Similar to the claim for bad faith, Ms. Tarasyuk presented sufficient evidence to question whether Enumclaw's settlement practices violated WAC 284-30-330. While Enumclaw denied the claim because of the business use policy exclusion, this does not act as a complete defense to the CPA claim because a question remains as to whether the basis for denial was reasonable.

Ms. Tarasyuk also presented sufficient evidence of the remaining elements of the CPA claim to overcome summary judgment: (1) Ms. Tarasyuk's interaction with Enumclaw occurred in the insurance trade, (2) the public interest in fair insurance practices, (3) Ms. Tarasyuk was injured when she paid premiums and was denied coverage, and (4) Enumclaw's acts were the cause of her injury.

Summary judgment was not appropriate. There are questions of material fact as to whether Enumclaw engaged in unfair claims settlement practices as defined in

19

WAC 284-30-330. The trial court erred in granting summary judgment on Ms. Tarasyuk's CPA claim.

*4.      Whether material facts preclude dismissal of Ms. Tarasyuk's IFCA claim*

For reasons similar to her bad faith and CPA claims, Ms. Tarasyuk contends that Enumclaw violated the IFCA. Ms. Tarasyuk claims that Enumclaw violated the IFCA by (1) unreasonably investigating her claim only to deny coverage, (2) misrepresenting pertinent facts or insurance policy provisions, (3) not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims where liability is clear, and (4) compelling her to initiate litigation.

Washington's IFCA applies exclusively to first-party insurance contracts. *Merrill v. Crown Life Ins. Co.*, 22 F. Supp. 3d 1137, 1148 (E.D. Wash. 2014). "The statute creates a private right of action against an insurer which (1) 'unreasonably denie[s] a claim for coverage or payment of benefits'; and/or (2) violates one of several claims handling regulations promulgated by the Washington State Office of the Insurance Commissioner." *Id.* (alteration in original) (quoting RCW 48.30.015(1), (5)). Like CPA claims, WAC 284-30-330 provides a basis for an IFCA claim. *Ainsworth v. Progressive Cas. Ins. Co.*, 180 Wn. App. 52, 78-79, 322 P.3d 6 (2014).

20

Similar to the good faith and CPA claims, summary judgment on the IFCA claim

was not appropriate. Factual questions need be resolved to determine whether

Enumclaw's denial of coverage or benefits was reasonable. The trial court erred in

granting summary judgment in favor of Enumclaw.

5. *Whether Ms. Tarasyuk is entitled to attorney fees and costs on appeal*

Pursuant to RAP 18.1, Ms. Tarasyuk requests attorney fees under the IFCA,

RCW 48.30.015; the CPA, RCW 19.86.090; RCW 4.84.010; and *Olympic S.S. Co. v*

*Centennial Ins Co.*, 117 Wn.2d 37, 53, 811 P.2d 673 (1991).

RCW 48.30.015(3) provides for attorney fees under the IFCA for a prevailing

party who is unreasonably denied a claim for coverage or payments of benefits.

RCW 19.86.090 provides for attorney fees for a person who establishes injury under the

CPA. RCW 4.84.010 provides for an award of costs, including attorney fees, at the trial

court level, not on appeal. *Olympic* provides for attorney fees when an insured is

compelled to initiate litigation to obtain the full benefit of his insurance contract.

*Olympic*, 117 Wn.2d at 52-53.

Attorney fees are not yet warranted and might not ever be. Generally speaking, the

IFCA, the CPA, and *Olympic* provide attorney fees when the party prevails on the merits

of the action. Here, while Ms. Tarasyuk presented a convincing argument to overturn

21

summary judgment, she did not prevail on her IFCA, CPA, or other claim. Her request for attorney fees is denied. If she is successful at trial, the trial court has the authority to award reasonable attorney fees, including reasonable attorney fees on this appeal.

We reverse the trial court's order of summary judgment on all claims.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, J.

WE CONCUR:

Brown, A.C.J.

Fearing, J.

22