COLORADO COURT OF APPEALS **2017COA35**

Court of Appeals No. 15CA0724
El Paso County District Court No. 13CV32156
Honorable Robin L. Chittum, Judge

Della Gallegos,

Plaintiff-Appellee and Cross-Appellant,

v.

Patric J. LeHouillier and LeHouillier & Associates, P.C.,

Defendants-Appellants and Cross-Appellees.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE BERNARD
Dunn, J., concurs
Webb, J., concurs in part and dissents in part

Announced March 23, 2017

Anderson Hemmat McQuinn, LLC, Julie E. Anderson, Chad P. Hemmat, Ethan
A. McQuinn, Jason G. Alleman, Greenwood Village, Colorado, for Plaintiff-
Appellee

Hall & Evans, L.L.C., Malcom S. Mead, John E. Bolmer II, Andrew P. Reitman,
Denver, Colorado, for Defendants-Appellants

¶ 1     A legal malpractice case is based on a claim that an attorney breached his or her professional duty of care in a way that proximately injured a client. *See Hopp & Flesch, LLC v. Backstreet,* 123 P.3d 1176, 1183 (Colo. 2005). Sometimes, such as in this case, the client claims that the attorney's breach of duty denied the client success in a lawsuit against the defendant. (For the purposes of clarity, we will call such a lawsuit the "underlying case.") To prevail in this type of malpractice case, the client must prove that the attorney would have been successful in the underlying case by, for example, winning a favorable judgment against a defendant. *Bebo Constr. Co. v. Mattox & O'Brien, P.C.,* 990 P.2d 78, 83 (Colo. 1999). Lawyers call this requirement proving the "case within a case." *Id.* (citation omitted).

¶ 2     It is clear to us that part of the case within a case may include resolving the question of whether any judgment that the attorney might have won in the underlying case would have been "collectible." Colorado law provides that, if the defendant in the underlying case was insolvent and the client would not have been able to collect on the judgment, then the client cannot prevail in the malpractice case against the attorney.

¶ 3     This appeal raises the issue of who bears the burden of proving that the judgment would have been collectible.  Must the client prove that the judgment was collectible as part of establishing a prima facie case?  Or must the attorney, as an affirmative defense, prove that the judgment was not collectible?  *See Welsch v. Smith*, 113 P.3d 1284, 1289 (Colo. App. 2005)(In a civil case, "[o]nce a prima facie case is established, the opposing party . . . carries the burden of establishing any affirmative defenses.").  We conclude that the attorney must raise the issue of collectibility as an affirmative defense, which means that he or she also bears the burden of proving that the judgment was not collectible.

¶ 4     In this case, the plaintiff, Della Gallegos, sued defendants Patric J. LeHouillier, an attorney, and his law firm, LeHouillier & Associates, P.C., for legal malpractice.  (We shall refer to the attorney and the law firm together as "Mr. LeHouillier" because their interests are congruent in this appeal.)  The jury found that Mr. LeHouillier had negligently breached his duty of professional care when handling an underlying case for Ms. Gallegos.

¶ 5     As part of the case within a case, the trial court decided that Ms. Gallegos bore the burden of proving that any judgment in the

underlying case — a medical malpractice case against a radiologist named Dr. Steven Hughes — was collectible. But our review of the record convinces us that there is no evidence to show that the judgment was collectible. So we must reverse the judgment.

¶ 6　　But that does not mean that we must enter judgment in favor of Mr. LeHouillier. We also conclude that the trial court erred when it placed the burden of collectibility on Ms. Gallegos because it should have placed the burden on Mr. LeHouillier to prove that a judgment against Dr. Hughes was *not* collectible. So we remand this case for a new trial. We additionally instruct the trial court that, at any new trial, Mr. LeHouillier must (1) raise the issue of collectibility as an affirmative defense; and (2) bear the burden of proving that any judgment against Dr. Hughes would not have been collectible.

## I.　Background

¶ 7　　Ms. Gallegos's malpractice case against Dr. Hughes stems from a 2006 MRI that he performed on Ms. Gallegos's brain. Ms. Gallegos claimed that Dr. Hughes overlooked a clearly visible meningioma. (A meningioma is a tumor that forms on the membranes that cover the brain or on the spinal cord inside the

skull. Although meningiomas are frequently benign, meaning that they are not cancerous, they can nonetheless cause serious problems, or even death, as they grow.)

¶ 8     Three years later, a different doctor spotted the meningioma during another MRI. By this time, it had grown three times larger than it had been in 2006.

¶ 9     Ms. Gallegos could have undergone noninvasive radiosurgery to treat the meningioma if Dr. Hughes had diagnosed it in 2006. But, by 2009, this treatment was no longer a viable option. So surgeons performed three craniotomies, or surgical openings, of Ms. Gallegos's skull to remove as much of the tumor as possible.

¶ 10    Ms. Gallegos retained Mr. LeHouillier to sue Dr. Hughes. Mr. LeHouillier investigated the case, but he decided in 2010 that he would not proceed with the case because it did not make "dollars and cents sense."

¶ 11    Mr. LeHouillier claimed that he had informed Ms. Gallegos of his decision in a meeting, adding that he would no longer represent her. But he did not keep any written records to memorialize what had been discussed at the meeting, and he did not send Ms. Gallegos a letter to inform her that he was no longer her attorney.

¶ 12    The statute of limitations ran on any medical malpractice case that Ms. Gallegos might have brought against Dr. Hughes.

¶ 13    Ms. Gallegos then filed this legal malpractice lawsuit against Mr. LeHouillier.  Among other things, the jury found that Dr. Hughes had been negligent, that Mr. LeHouillier had been negligent, that Ms. Gallegos had been partly negligent, but less negligent than either Dr. Hughes or Mr. LeHouillier, and that Ms. Gallegos was entitled to an award of damages from Mr. LeHouillier.

¶ 14    Turning to the issue of collectibility, during the trial and after Ms. Gallegos had rested her case-in-chief, Mr. LeHouillier moved for a directed verdict.  He asserted that Ms. Gallegos bore the burden of proving that any judgment against Dr. Hughes would have been collectible, and that she had not carried her burden.  The trial court agreed that Ms. Gallegos bore the burden of proving that the judgment would have been collectible, but it ruled that Ms. Gallegos had provided sufficient evidence to prove that point.

¶ 15    After the trial, Mr. LeHouillier raised the same point in a motion for judgment notwithstanding the verdict (JNOV).  The court made the same ruling.

II.   There Was No Evidence That the Judgment Was Collectible

¶ 16    Mr. LeHouillier contends that we must reverse the judgment because collectibility is an element that a plaintiff must prove in a legal malpractice case, and Ms. Gallegos did not prove that any judgment that she would have received in the underlying case against Dr. Hughes would have been collectible.

¶ 17    Ms. Gallegos counters that the question of collectibility is an affirmative defense, and that the court should have required Mr. LeHouillier to prove that the judgment was not collectible.  Ms. Gallegos does not dispute that, if a 1927 Colorado Supreme Court case is read as she suggests, a new trial would be appropriate. Even though the trial court wrongly assigned the burden to her, she continues, she shouldered the burden by providing sufficient proof that the judgment was collectible.

¶ 18    As we have indicated above, we agree with Mr. LeHouillier that the record does not contain sufficient evidence that the judgment was collectible.  But we agree with Ms. Gallegos that (1) the trial court erroneously placed the burden on her to prove that fact; and (2) the court should have required Mr. LeHouillier to (a) raise the question of collectibility as an affirmative defense; and (b) prove that

6

any judgment that Ms. Gallegos would have received would not have been collectible.

## A. Standard of Review

¶ 19 We review de novo the grant or denial of a motion for directed verdict or JNOV. *See Vaccaro v. Am. Family Ins. Grp.*, 2012 COA 9M, ¶ 40. We view the evidence "in the light most favorable to the party against whom the motion [was] directed," *id.* at ¶ 45, and "indulge every reasonable inference that can be drawn from the evidence in that party's favor," *Hall v. Frankel*, 190 P.3d 852, 862 (Colo. App. 2008).

## B. Evidence of Collectibility

¶ 20 Ms. Gallegos contends that she provided sufficient evidence to support an "inference" that Dr. Hughes carried professional liability insurance, which would mean that the judgment would have been collectible. She points to the following facts in the trial record that establish this inference:

- Mr. LeHouillier wrote Dr. Hughes a letter in which he explained that he was representing Ms. Gallegos in a potential medical malpractice case against the doctor. The letter encouraged Dr. Hughes to "contact [his] professional

7

liability insurer." According to Ms. Gallegos, after Mr. LeHouillier sent this letter, "neither Dr. Hughes nor any other person ever informed [Mr.] LeHouillier that Dr. Hughes lacked insurance . . . ."

- When Dr. Hughes did not diagnose Ms. Gallegos's meningioma in 2006, he was a licensed doctor who was practicing medicine at a hospital. Section 13-64-301(1)(a.5)(I), C.R.S. 2016, required all practicing doctors to maintain professional liability insurance covering each incident up to one million dollars.

¶ 21 We conclude, for the following reasons, that this evidence did not create the inference that Ms. Gallegos suggests. Turning first to the letter, although Dr. Hughes may not have informed Mr. LeHouillier that he did not have liability coverage, he did not inform Mr. LeHouillier that he *possessed* liability coverage, either. Indeed, Dr. Hughes said nothing at all. He did not respond to the letter in any way; he did not provide any other information to Mr. LeHouillier or to Ms. Gallegos; and Ms. Gallegos did not offer any proof that Dr. Hughes had even received the letter. Like Godot, Dr. Hughes's

appearance in the case may have been much anticipated, but it never came to pass.

¶ 22    Ms. Gallegos's reliance on section 13-64-301(1)(a.5)(I) fares no better.  True enough, the record supports the conclusion that Dr. Hughes was a doctor who was practicing medicine when he performed the MRI on Ms. Gallegos, so the statute may well have applied to him.  But we cannot find anywhere in the record — and Ms. Gallegos does not provide us with any direction to a specific place — where the jury learned about section 13-64-301(1)(a.5)(I). And we do not know whether Dr. Hughes had complied with the statute by maintaining liability insurance.  We cannot infer that the jury reached its verdict based on the requirements of a statute that it never heard anything about.

¶ 23    We recognize that we must view the evidence in the light most favorable to Ms. Gallegos and draw every reasonable inference in her favor.  *See Hall,* 190 P.3d at 862.  But the record contains no evidence on collectibility at all.  So we conclude that the "record is devoid of any proof" that any judgment against Dr. Hughes in the underlying case would have been collectible.  *Green v. Castle Concrete Co.,* 181 Colo. 309, 314, 509 P.2d 588, 591 (1973).

¶ 24     But our job is not yet over. In other situations, we would simply enter judgment in Mr. LeHouillier's favor because Ms. Gallegos did not satisfy her burden of proof. But, in this case, we must next decide whether the trial court erred when it allocated that burden of proof by requiring Ms. Gallegos to prove that any judgment against Dr. Hughes in the underlying case would have been collectible.

## III.    The Attorney Bears the Burden of Proving That a Judgment Would Not Be Collectible as an Affirmative Defense in a Legal Malpractice Case

### A.    The Strange Case of *Lawson v. Sigfrid*

¶ 25     We encountered a mystery on the road to answering the central question in this case. The mystery concerns a ninety-year-old, one-and-one-quarter-page Colorado Supreme Court case, *Lawson v. Sigfrid*, 83 Colo. 116, 262 P. 1018 (1927).

¶ 26     Courts from other jurisdictions and some commentators have cited *Lawson* for the proposition that a plaintiff in a legal malpractice case bears the burden of proving that any judgment in the underlying case would have been collectible. *See Beeck v. Aquaslide 'N' Dive Corp.*, 350 N.W.2d 149, 160 (Iowa 1984); *Paterek v. Petersen & Ibold*, 890 N.E.2d 316, 321 (Ohio 2008); *Kituskie v.*

10

*Corbman*, 714 A.2d 1027, 1031 n.6 (Pa. 1998); *Taylor Oil Co. v. Weisensee*, 334 N.W.2d 27, 29 n.2 (S.D. 1983); *see also, e.g.*, 4 Ronald E. Mallen, *Legal Malpractice* § 33:32, at 747 n.5 (2017 ed.); 7 John W. Grund, J. Kent Miller & David S. Werber, *Colorado Personal Injury Practice — Torts and Insurance* § 22:22, at 540 n.7 (3d ed. 2012); Elisa Recht Marlin, Recent Decision, Kituskie v. Corbman, *714 A.2d 1027 (Pa. 1998)*, 37 Duq. L. Rev. 521, 530, 530 n.77 (1999).

¶ 27    But, after studying *Lawson* carefully, we conclude that it does not stand for the entire proposition for which it has been cited. Although we agree that *Lawson* held that the collectibility of a judgment in the underlying case is pertinent to a legal malpractice case, we respectfully disagree with those who think that *Lawson* allocated the burden of proving collectibility to the plaintiff.

¶ 28    We begin our analysis by summarizing *Lawson*'s facts.  The plaintiff hired a lawyer in 1919 to sue Bessie Kennedy for an unpaid debt.  *Lawson*, 83 Colo. at 116-17, 262 P. at 1018.  The case lingered until 1923, when the plaintiff and the lawyer discovered that the trial court had dismissed the case for failure to prosecute it.  *Id.* at 117, 262 P. at 1018.

¶ 29     The plaintiff then sued the lawyer for "neglect of professional

duty." *Id.* The trial court granted the lawyer's motion for a directed

verdict. *Id.* In doing so, it decided that the plaintiff had to prove

three things:

- the lawyer had been negligent;

- the plaintiff had "a good cause of action" against Ms.
  Kennedy; and

- if the plaintiff had obtained a judgment against Ms.
  Kennedy, the judgment "could have been executed."

*Id.* The trial court then found that the plaintiff's proof that the

judgment could have been executed "had failed." *Id.*

¶ 30     So, at this point in *Lawson,* we have learned that the *trial court*

had required the plaintiff to prove that the debt was collectible. *See

id.* But what did the *supreme court* do?

¶ 31     *The court analyzed the record.* As is pertinent to our analysis,

it stated that it was "clear" that (1) the lawyer "was not negligent";

and, (2) shortly before the plaintiff had hired the lawyer, Ms.

Kennedy had been "insolvent." *Id.*

¶ 32     *The court described the plaintiff's contentions.* The plaintiff

raised three contentions, but only two of them are relevant to our

12

discussion. The plaintiff asserted that (1) the burden was on the *defendant lawyer* to prove that Ms. Kennedy had been insolvent; and (2) the plaintiff was entitled to recover his costs and expenses from the lawyer. *Id.* at 118, 262 P. at 1018.

¶ 33 *The court only used two citations to legal authority in the opinion, and only one of them was even casually relevant to the issue of collectibility.* The relevant citation is to a legal treatise, 2 Charles Frederick Chamberlayne, *Treatise on the Modern Law of Evidence* § 1047, at 1244 (1911). But this section of the treatise only stated that, once a person was proved to be insolvent, there was an inference that such insolvency would continue for a reasonable time, subject to contrary proof. (The second, irrelevant, citation is to a section of the legal encyclopedia *Ruling Case Law,* 8 R.C.L. 426, discussing when nominal damages were available.)

¶ 34 *The court then resolved the two contentions.* The court first held that the *plaintiff's* evidence had shown that Ms. Kennedy had been insolvent and that her insolvent status was "presumed to have continued until the contrary appear[ed]." *Lawson,* 83 Colo. at 118, 262 P. at 1018. The court then concluded that the plaintiff could not have "lost" any of his costs or expenses as a result of the

13

lawyer's negligence because Ms. Kennedy was insolvent. *Id.* at 118, 262 P.3d at 1019.

¶ 35  Based on this analysis, we derive two observations about what *Lawson* means.

　　　1.  We know what the supreme court did.  The court's resolution of the plaintiff's second contention established that the question of collectibility matters in a legal malpractice case: Because Ms. Kennedy was insolvent, the lawyer's negligence did not cause the plaintiff to lose his costs and expenses.

　　　2.  We also know what the supreme court did not do.  The court did not hold that a plaintiff in a legal malpractice suit bears the burden of proving that any judgment that he or she could have obtained in the underlying case would have been collectible.  To be more accurate, it did not allocate the burden of proving collectibility at all.

¶ 36  Fleshing out our second observation, it is true that (1) the supreme court recognized that the *trial court* had reached the conclusion that the plaintiff bore such a burden; (2) the evidence had proved that Ms. Kennedy had been insolvent shortly before the

14

plaintiff had hired the defendant lawyer; and (3) the plaintiff had contended on appeal that the burden was on the defendant lawyer to show that Ms. Kennedy had been insolvent. *Id.* at 117-18, 262 P. at 1018-19. But the court did not then hold that the trial court had properly allocated the burden of proving Ms. Kennedy's insolvency to the plaintiff.

¶ 37 The court instead concluded that the *plaintiff had proved* that Ms. Kennedy had been insolvent. *Id.* at 118, 262 P. at 1018. In other words, the supreme court did not have to reach the issue whether the trial court had properly allocated the burden of proof. It merely recognized that, after the trial court had allocated the burden of proving Ms. Kennedy's solvency on the plaintiff, the plaintiff had proved the opposite. *See id.* So, once the plaintiff's proof had shown that the debt was not collectible, the supreme court did not need to decide anything else. *Lawson* did nothing more than hold that the trial court's conclusions *about the evidence* were supported by the record. *See id.*

¶ 38 A pair of commentators agrees with our analysis of *Lawson*. *See* Michael P. Cross & Nicole M. Quintana, *Your Place or Mine?: The Burden of Proving Collectibility of an Underlying Judgment in a*

*Legal Malpractice Action*, 91 Denv. U. L. Rev. Online 53, 54 (2014)(explaining that *Lawson* "established the relevancy of the question of whether an underlying judgment is collectible in a legal malpractice action," but that it did not allocate the burden of proof on this point).

## B.    Colorado Cases After *Lawson*

¶ 39    Mr. LeHouillier does not cite, and we have not found, any Colorado Supreme Court case that has held that the plaintiff bears the burden of proving collectibility as part of the prima facie case in a legal malpractice claim.

¶ 40    In the ninety years since the supreme court decided *Lawson,* the supreme court has never cited it.  But the court has decided several legal malpractice cases in that time that have discussed the "case within a case" component of proximate cause.  The most that any of them says is that a plaintiff "must demonstrate that the claim underlying the malpractice action should have been successful if the attorney had acted in accordance with his or her duties."  *Bebo*, 990 P.2d at 83; *accord Gibbons v. Ludlow*, 2013 CO 49, ¶ 16 (transactional broker case applying test from *Bebo*); *Rantz v. Kaufman,* 109 P.3d 132, 136 (Colo. 2005)(explaining that the

client must show the underlying case would have been successful but for counsel's malpractice).

¶ 41 The court of appeals has only cited *Lawson* once in a published case. In *Morris v. Geer*, 720 P.2d 994, 996 (Colo. App. 1986), a legal malpractice case arising out of a divorce, a wife alleged that her divorce attorney had been negligent when he negotiated a property settlement and when he investigated the husband's fraud in hiding marital assets from the wife. The division cited *Lawson* as support for the proposition that the wife, when suing the attorney, was required to prove that "because of husband's fraud her motion to reopen the dissolution decree could have been successfully prosecuted, and that she would have received a higher property distribution as a result." *Id.* at 998.

¶ 42 We do not think that the division cited *Lawson* for the proposition that the wife had to prove that she would have been able to *collect* the increased property distribution. Rather, in the context of the case, we think that the division held that the wife would have to prove the court would have *awarded* her more assets in the property distribution. Indeed, the division did not use the term "collectibility" in the opinion at all.

¶ 43    Our conclusion is reinforced by the *Morris* division's citation of

two other cases immediately after it cited *Lawson*: *Coon v. Ginsberg*,

32 Colo. App. 206, 509 P.2d 1293 (1973), and *Rosebud Mining &*

*Milling Co. v. Hughes*, 21 Colo. App. 247, 121 P. 674 (1912).  Both of

those cases merely observed that, to prove a legal malpractice

claim, the plaintiff would have to show that he or she would have

been successful in the underlying case.  *Coon* held that the plaintiff

had to prove that "the amount of that judgment would have been

more favorable to [her] than the settlement arranged by [her

attorney]."  32 Colo. App. at 210, 509 P.2d at 1295.  *Rosebud*

*Mining & Milling Co.* stated that the defendant claimed that the

plaintiff had to show that "the judgment, on a retrial, would have

been favorable to plaintiff," that the plaintiff had not "taken issue

with defendant on this point," and that three out-of-state cases

"tend[ed] to sustain [the defendant's] contention."  21 Colo. App. at

250, 121 P. at 675.

¶ 44    Neither case discussed collectibility.

¶ 45    (We note that *Miller v. Byrne*, 916 P.2d 566, 579 (Colo. App.

1995), contained similar language to what we highlighted in *Morris*.

But the division did not cite any authority, let alone *Lawson*, to

18

support this language.  It held instead that the jury should have been instructed that the plaintiffs "were required to prove . . . the amount that [they] should have recovered" in the underlying case. *Id.*  The context of this statement convinces us that the use of the word "recovered" did not mean that plaintiffs had to prove what they would have "received."  Rather, they had to prove, as part of showing that they had suffered damages, the approximate amount of any judgment that they would have been awarded if they had been successful in the underlying case.)

¶ 46      So why have other jurisdictions and commentators cited *Lawson* for a conclusion that we think it did not reach?  Although we cannot be sure, we have a hypothesis.

C.      How *Lawson* Has Been Cited in Other States

¶ 47      We have found at least two pre-*Lawson* cases where courts in other states have held that the burden to prove collectibility rests on the plaintiff.  *Jones v. Wright*, 91 S.E. 265, 266 (Ga. Ct. App. 1917)("In an action against an attorney to recover the amount of a claim, . . . it is necessary that the petition against him show that the lost claim was a valid one under the law, and that the debtor was solvent."); *Piper v. Green*, 216 Ill. App. 590, 593, 595

(1920)(same).  But no court cited *Lawson* for this proposition for forty-nine years.

¶ 48    Then, in 1976, the Georgia Court of Appeals included *Lawson* as part of a string citation supporting the proposition that "[t]he requirement that solvency be shown is both longstanding and widespread."  *McDow v. Dixon*, 226 S.E.2d 145, 147 (Ga. Ct. App. 1976).  (In this context, solvency "is not intended to imply a bankruptcy-type standard, but rather is intended to illustrate the original defendant's ability to pay a judgment, had one been rendered against him."  *Id.*)  So far, so good, because, as we recognized above, our supreme court reached this holding in *Lawson.*

¶ 49    But the preceding sentence in *McDow*, at the end of the previous paragraph, explained: "A client suing his attorney for malpractice not only must prove that his claim was valid and would have resulted in a judgment in his favor, but also that said judgment would have been collectible in some amount . . . ."  *Id.*

¶ 50    We think that the mischief lies in these two consecutive sentences.  Courts and commentators who would later read those

20

two sentences might well have thought that *Lawson* had held that the client bears the burden of proving collectibility.

¶ 51     And so *Lawson* acquired the reputation of standing for a proposition that it did not decide.  In one case, it was included in a footnote after the South Dakota Supreme Court quoted *McDow*. *See Taylor Oil Co.*, 334 N.W.2d at 29 n.2.  It was marshaled, along with *McDow*, in the ranks of a string citation that the Iowa Supreme Court offered as support for the proposition that assigning to the plaintiff the burden of proving collectibility is "the rule which is applied generally."  *Beeck*, 350 N.W.2d at 160.  Citing *Lawson* and *McDow*, a superior court in Pennsylvania included Colorado and Georgia in a list of thirteen states that "place[d] the burden upon the plaintiff (in a malpractice action against an attorney) to prove collectibility of the underlying judgment."  *Kituskie v. Corbman*, 682 A.2d 378, 381 (Pa. Super. Ct. 1996), *aff'd and remanded*, 714 A.2d 1027.  The Pennsylvania Supreme Court cited *Lawson* and *McDow* for the same proposition in a footnote when addressing an appeal from the superior court's decision.  *Kituskie*, 714 A.2d at 1031 n.6. And, although *Paterek*, 890 N.E.2d at 321, did not cite *McDow*, it cited *Taylor Oil Co.*

21

¶ 52    Once this ball got rolling, commentators included *Lawson* among those cases placing the burden of proving collectibility on the plaintiff without any analysis of the case beyond a simple citation. *See, e.g.,* Mallen, § 33:32 at 747 n.5; Grund, Miller & Werber, § 22:22 at 540 n.7; Marlin, 37 Duq. L. Rev. at 530, 530 n.77.

¶ 53    Now that we see that we are writing on a blank slate as far as allocating the burden to prove collectibility is concerned, we turn to deciding whether that burden *should* be placed on the plaintiff in a legal malpractice case. We review this issue de novo because it is a question of law. *See Allen v. Steele*, 252 P.3d 476, 481 (Colo. 2011).

### D.    Allocating the Burden to Prove Collectibility

¶ 54    It should be apparent from the discussion up to this point that many states place the burden of proving collectibility on the plaintiff. In fact, it is the majority rule. In addition to the cases that we have discussed above, one could look to other decisions, such as *Wise v. DLA Piper LLP (US)*, 164 Cal. Rptr. 3d 54, 61 (Cal. Ct. App. 2013), and *Viola v. O'Dell*, 950 A.2d 539, 542 (Conn. App. Ct. 2008), as examples of the majority. The Ohio Supreme Court best summed up the reasoning for the majority rule in *Paterek*, 890

N.E.2d at 321: "[C]ollectibility is logically and inextricably linked to the legal-malpractice plaintiff's damages, for which the plaintiff bears the burden of proof." For the plaintiff to show "what was lost, the plaintiff must show what would have been gained." *Id.*

¶ 55 But there is a strong and growing minority of states that allocate the burden differently, making the issue of collectibility an affirmative defense that an attorney must raise and prove. (The majority does not include many more states than the minority. One commentator referred to the minority as "significant." Mallen, § 33:32, at 752, 752 n.18. A pair of others called the number of jurisdictions in the minority only "slightly less[]" than the number of those in the majority. Cross & Quintana, 91 Denv. U. L. Rev. Online at 58.) Some of the cases in the minority are of very recent vintage. *See, e.g., Smith v. McLaughlin*, 769 S.E.2d 7, 18 (Va. 2015); *Schmidt v. Coogan*, 335 P.3d 424, 428-30 (Wash. 2014). Others were bottled some years ago. *See, e.g., Smith v. Haden*, 868 F. Supp. 1, 2-3 (D.D.C. 1994); *Power Constructors, Inc. v. Taylor & Hintze*, 960 P.2d 20, 31-32 (Alaska 1998); *Teodorescu v. Bushnell, Gage, Reizen & Byington*, 506 N.W.2d 275, 278-79 (Mich. Ct. App.

1993); *Carbone v. Tierney*, 864 A.2d 308, 319 (N.H. 2004); *Kituskie*, 714 A.2d at 1032.

¶ 56    The minority rule relies on at least seven compelling rationales.

¶ 57    First, by the time the issue of collectibility arises in a legal malpractice trial, the need to prove it "is the result of an attorney's established malpractice . . . . It is a burden created by the negligent attorney." *Schmidt*, 335 P.3d at 428. To require clients to prove collectibility therefore allocates the burden of proof unfairly, even when the parties do not dispute that the defendant in the underlying case was solvent. *Id.*; *see also Carbone*, 864 A.2d at 318. And a plaintiff in a legal malpractice case already has the burden of proving negligence *twice*. (For example, in this case, Ms. Gallegos must show that Mr. LeHouillier was negligent when he did not file the medical malpractice claim against Dr. Hughes within the statute of limitations. She must then establish, as part of proving the case within a case, that Dr. Hughes was negligent when he did not diagnose her meningioma.) *See Kituskie*, 682 A.2d at 382 (The client "should not have the added burden of proving collectibility

since he or she has already been allegedly wronged by two parties.").

¶ 58    Second, an attorney is "in as good a position" to "prove uncollectibility." *Schmidt*, 335 P.3d at 428; *see also McLaughlin*, 769 S.E.2d at 18. This is because the attorney should have investigated the solvency of the defendant in the underlying case at the beginning of the client's case. *See Schmidt*, 335 P.3d at 428. And, even if the attorney did not do so, he is as capable as the client to discover whether a judgment in the underlying case would be collectible. *See id.*

¶ 59    Third, to require the client to introduce evidence of collectibility would often be at odds with evidence rules and case law generally excluding evidence of insurance coverage. *See id.* at 428-29; *see also* CRE 411 ("Evidence that a person was or was not insured against liability is not admissible upon the issue whether he acted negligently or otherwise wrongfully."); *Lombard v. Colo. Outdoor Educ. Ctr., Inc.*, 266 P.3d 412, 421 (Colo. App. 2011)("An attorney's attempt to refer to insurance coverage or a lack thereof at trial is improper.").

¶ 60    Fourth, a delay between the original injury and a legal malpractice claim is common, which could hurt the client's opportunity to gather evidence about collectibility. *See Schmidt*, 335 P.3d at 429. And "[i]t is unfair to place this burden on [the client] when the attorney's negligence created the delay in the first place." *Id.* (citing *Kituskie*, 714 A.2d at 1027).

¶ 61    Fifth, the insolvency of the defendant in the underlying case permits the attorney to mitigate or to avoid the "consequences of one's negligent act." *Jourdain v. Dineen*, 527 A.2d 1304, 1306 (Me. 1987). Because the attorney will benefit from that insolvency, he or she should bear the "inherent risks and uncertainties of proving it." *Lindenman v. Kreitzer*, 775 N.Y.S.2d 4, 8 (N.Y. App. Div. 2004).

¶ 62    Sixth, placing the burden on the attorney does not eliminate the effect of insolvency; if the attorney proves that a judgment is not collectible, damages could be mitigated or eliminated. *Schmidt*, 335 P.3d at 429. We therefore disagree with those cases that hold that placing the burden on an attorney results in a "windfall" for the client. *Cf. Fernandez v. Barrs*, 641 So. 2d 1371, 1376 (Fla. Dist. Ct. App. 1994)(noting that the majority rule "prevents a windfall to the client by preventing him from recovering more from the attorney

26

than he could have actually obtained from the tortfeasor in the underlying action"), *disapproved of on other grounds by Chandris, S.A. v. Yanakakis*, 668 So. 2d 180, 185 (Fla. 1995).

¶ 63 Finally, plaintiffs in the vast majority of negligence cases do not have to prove that any judgment that they might win will be collectible. Collectibility is simply not a value that most negligence cases enter into the calculus of causation. *See Haden*, 868 F. Supp. at 2 ("In a normal civil lawsuit . . . a plaintiff must prove each required element to make out a case against the defendant in order to obtain a judgment. It is not necessary to demonstrate that [the] plaintiff will successfully be able to execute on the judgment or that the judgment is collectible. Normally, enforcement of the judgment remains for another day.").

¶ 64 Some analysts and commentators have supported all or part of the "growing trend," *McLaughlin*, 769 S.E.2d at 18 (citation omitted), of the minority rule.

- The minority rule has momentum. In 1999, at least seventeen states followed the majority rule, while only four states followed the minority rule. Marlin, 37 Duq. L. Rev. at 534. In 2014, seventeen states followed the majority rule,

and eleven states followed the minority rule. Cross & Quintana, 91 Denv. U. L. Rev. Online at 57 n.27. And the number of jurisdictions in the minority grew by at least two cases after the Cross & Quintana article was published. *See McLaughlin*, 769 S.E.2d at 18; *Schmidt*, 335 P.3d at 428-30.

- Even some of the commentators who listed *Lawson* as placing the burden of proving collectibility on the client noted that such an allocation of the burden of proof was a bad idea. Grund, Miller & Werber, § 22:22, at 540 (The concept of placing the burden of proof on a client "is suspect, especially when the defendant attorney is charged with negligence in his handling of a claim against an insolvent party. This defense is an admission that the underlying case should never have been brought by the defendant lawyer.").

- One commentator contended that it was "unjustifiable" to place the burden of proving collectibility on the client, adding that the attorney "should bear the burden of persuading the jury that any judgment would have been

uncollectible, or at a minimum should bear the burden of coming forward with evidence demonstrating that uncollectibility was a real possibility." John Leubsdorf, *Legal Malpractice and Professional Responsibility*, 48 Rutgers L. Rev. 101, 150-51 (1995)(footnote omitted).

• Another commentator made a similar point, asserting that attorneys should bear the burden of proving that a judgment was uncollectible because "[c]ollectibility thus becomes a means of reducing the damages that might otherwise be owed, taking its place with such doctrines as the avoidable consequences rule." John H. Bauman, *Damages for Legal Malpractice: An Appraisal of the Crumbling Dike and the Threatening Flood*, 61 Temp. L. Rev. 1127, 1137 (1988).

• A pair of commentators observed that the "minority of jurisdictions focus more on ideas of fairness" than the majority of jurisdictions do. Cross & Quintana, 91 Denv. U. L. Rev. Online at 58.

• Although the Restatement (Third) of the Law Governing Lawyers § 53 cmt. b (Am. Law Inst. 2000), states that the

client ultimately bears the burdens of proving collectibility, it places the burden on the defendant lawyer of "coming forward with evidence" to "show that the judgment or settlement would have been uncollectible."

¶ 65    We are persuaded by the various rationales behind the minority rule, and so we will apply it in this case.

¶ 66    We conclude that the trial court erred when it placed the burden on Ms. Gallegos to prove that any judgment in the underlying case against Dr. Hughes would have been collectible.  In any trial on remand, Mr. LeHouillier must raise the issue of whether the judgment would have been collectible as an affirmative defense, and he shall bear the burden of proving that the debt was not collectible.

¶ 67    We decline to address Mr. LeHouillier's additional contentions and any of Ms. Gallegos's contentions on cross-appeal.  We cannot predict with any certainty whether any of these contentions is likely to arise on retrial.  *See, e.g.*, *People v. Reynolds*, 159 P.3d 684, 690 (Colo. App. 2006)(addressing only those issues that are "likely to recur").  For example, the contentions concerning damages will only

arise if Ms. Gallegos and Mr. LeHouillier decide to retry this case and Ms. Gallegos is again successful.

¶ 68    The judgment is reversed.  The case is remanded for a new trial.  The trial court shall, at any new trial, require Mr. LeHouillier (1) to raise the issue of collectibility as an affirmative defense; and (2) bear the burden of proving that any judgment against Dr. Hughes would not have been collectible.

JUDGE DUNN concurs.

JUDGE WEBB concurs in part and dissents in part.

JUDGE WEBB, concurring in part and dissenting in part.

¶ 69     While "the collectibility of a judgment is not an issue in other types of cases . . . a legal malpractice action is distinctly different from an ordinary lawsuit." *Kituskie v. Corbman*, 682 A.2d 378, 381 (Pa. Super. Ct. 1996), *aff'd and remanded*, 714 A.2d 1027 (Pa. 1998).  Recognizing this difference, everyone before us agrees that collectibility of the hypothetical judgment in the underlying case is important.  But just how important is it?

¶ 70     For me, proof of collectibility is so important that it must be an element of a legal malpractice plaintiff's case.  And so I respectfully dissent from the majority's holding that relegates collectibility to a mere affirmative defense, to be pleaded and proven by the defendant attorney.

¶ 71     Both commentators and courts disagree over which side bears the burden of proof on collectibility.  But to begin, I agree with the majority that

- in *Lawson*, our supreme court did not allocate this burden of proof;

32

- among cases in other jurisdictions, more courts require that a legal malpractice plaintiff prove collectibility than require that the defendant attorney prove insolvency;

- Ms. Gallegos did not present any evidence of collectibility; and

- Mr. LeHouillier did not present any evidence of Dr. Hughes's insolvency.

¶ 72    But at this point, I part ways with my colleagues and join the lion's share of cases.  In my view, the jury was properly instructed that Ms. Gallegos bore the burden of proving collectibility.  And because she did not present any such evidence, Mr. LeHouillier's motion for a directed verdict should have been granted.

¶ 73    With great perseverance, the majority seeks to work around the cases recognizing collectibility as an element of every legal malpractice plaintiff's burden concerning the so-called case within a case.  Instead of pursuing that quest into the far-off land of policy, I would allocate the burden of proving collectibility to the legal malpractice plaintiff based on three principles much closer to home.  Those principles are the basic negligence paradigm, the affirmative

defenses listed in C.R.C.P. 8(c), and the law's strong preference for avoiding windfalls.

¶ 74     First, legal malpractice can be pleaded as breach of contract or professional negligence. *Baker v. Wood, Ris & Hames, Prof'l Corp.*, 2016 CO 5, ¶ 46. Ms. Gallegos chose negligence. As a result of her choice, like in every negligence case, she had to prove duty, breach, causation, and damages. *See, e.g., Lombard v. Colo. Outdoor Educ. Ctr., Inc.*, 266 P.3d 412, 416 (Colo. App. 2011).

¶ 75     Of course, the majority cannot reject this basic four-factor paradigm. Yet, in my view, because collectibility affects not one but two of those factors — obviously damages but also causation — the majority gives it insufficient weight.

¶ 76     To be sure, even where a wrong has been shown, an action fails without proof of causation and damages. *See Gibbons v. Ludlow*, 2013 CO 49, ¶ 12 ("To recover on a claim of professional negligence, the plaintiff must prove that the professional['s] . . . breach proximately caused an injury to the plaintiff, and that damages resulted."). In a legal malpractice claim alleging that a lawyer mishandled an underlying case, the plaintiff's damages are not the amount of the hypothetical judgment, but the extent to

which that judgment could have been collected. As the court

explained in *Paterek v. Petersen & Ibold*, 890 N.E.2d 316, 321-22

(Ohio 2008):

> In proving what was lost, the plaintiff must
> show what would have been gained. . . . The
> malpractice plaintiff need not prove the
> collectibility of the attorney she is suing, but
> she must prove that the attorney she is suing
> has indeed injured her through neglecting to
> properly handle a lawsuit that would have
> generated recompense. And her injury is
> measured by what she actually would have
> collected.

¶ 77    But the import of collectibility goes beyond just the measure of

damages. "If the underlying judgment was uncollectible, for

example, due to insufficient assets or bankruptcy, the lost value of

the judgment is not the proximate result of an attorney's

negligence." *Schmidt v. Coogan*, 335 P.3d 424, 428 (Wash. 2014);

*see also* Joseph H. Koffler, *Legal Malpractice Damages in a Trial

Within a Trial — A Critical Analysis of Unique Concepts: Areas of

Unconscionability*, 73 Marq. L. Rev. 40, 52 (1989) ("To predicate an

award of damages upon both the requirement that a judgment

would have been recovered and that it would have been collectible

. . . requires a showing of causation . . . that is conceptually no

different from that required in negligence cases generally."), *quoted with approval in Klump v. Duffus*, 71 F.3d 1368, 1374 (7th Cir. 1995) (applying Illinois law).

¶ 78    "The traditional approach rests primarily on the theory *that it is consistent with tort law*: plaintiffs may recover only the amount that will make them whole (and not a windfall), and the plaintiff must prove both proximate cause and injury." *Schmidt*, 335 P.3d at 428 (emphasis added).  Yet, treating collectibility as an affirmative defense dilutes this "traditional approach" by half — the majority erases both damages and causation from the plaintiff's side of the ledger and then writes them on the defendant's side.

¶ 79    Second, the sole affirmative defense involving damages is "[a]ny mitigating circumstances to reduce the amount of damage[s]."  C.R.C.P. 8(c).  By its very wording, this defense assumes that the plaintiff has already proven at least some damages.  If not, the defendant would be entitled to a directed verdict.  *See City of Westminster v. Centric-Jones Constructors*, 100 P.3d 472, 477 (Colo. App. 2003).  Thus, morphing collectibility into an affirmative defense distorts C.R.C.P. 8(c).

¶ 80    Third, the law disfavors windfalls. *Dick v. Indus. Comm'n*, 197 Colo. 71, 75, 589 P.2d 950, 952 (1979) ("The law should not allow an employer or his insurer to reap a windfall . . . ."), *overruled on other grounds by Estate of Huey v. J.C. Trucking, Inc.*, 837 P.2d 1218, 1220 (Colo. 1992). But as cases on both sides of the allocation question recognize, allowing a legal malpractice plaintiff to rest without presenting any evidence of collectibility risks that the plaintiff will recover *more* from the defendant lawyer than the plaintiff could ever have recovered from the hypothetical defendant in the underlying case. *See, e.g.*, *Klump*, 71 F.3d at 1374 ("Hypothetical damages above the amount that Klump could genuinely have collected from Eaves are not a legitimate portion of her 'actual injury;' awarding her those damages would result in a windfall."); *Fernandez v. Barrs*, 641 So. 2d 1371, 1376 (Fla. Dist. Ct. App. 1994)(noting that the majority rule "prevents a windfall to the client by preventing him from recovering more from the attorney than he could have actually obtained from the tortfeasor in the underlying action"), *disapproved of on other grounds by Chandris, S.A. v. Yanakakis*, 668 So. 2d 180, 185 (Fla. 1995).

¶ 81     Despite all of this — or perhaps because of it — the majority advances seven policy considerations supported, in varying degrees, by cases adopting the minority view.  But relying on policy "is to lean upon a slender reed."  *Missouri v. Holland*, 252 U.S. 416, 434, (1920).  And in states with intermediate appellate courts, deciding a case based on policy "is more properly the province" of the state's supreme court.  *Rosenbloom v. Bauchat*, 654 So. 2d 873, 876 (La. Ct. App. 1995)

¶ 82     Be that as it may, I quote the majority's articulation of these policy considerations and respond to the cited authorities as follows.

¶ 83     First, "to require clients to prove collectibility therefore allocates the burden of proof unfairly."  But one might wonder exactly what is "unfair" about applying basic principles of causation and damages to legal malpractice.  The authorities cited include *Carbone v. Tierney*, 864 A.2d 308 (N.H. 2004), *Kituskie*, and *Schmidt*.  But a closer look shows that these cases do not carry the weight that the majority places on them.

¶ 84     *Carbone* does not offer an independent analysis of fairness, instead quoting the more recent *Kituskie* case for the proposition

38

that requiring the plaintiff to prove collectibility would be "an unfair burden." 864 A.2d at 318. And *Kituskie* advances this conclusion on the basis that "the plaintiff's legal malpractice action is often brought years after the initial accident causing his injuries solely because the defendant/lawyer failed to act in a timely and competent manner." 714 A.2d at 1031. I dispose of the delay concern below.

¶ 85    *Schmidt* says that "the traditional approach unfairly presumes that an underlying judgment is uncollectible." 335 P.3d at 428. But no Colorado case has presumed that a judgment is collectible. And presuming collectibility would be difficult to reconcile with the increasingly common practice of seeking bankruptcy protection. *See Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. __, __ n.2, 135 S. Ct. 1932, 1939 n.2 (2015) (from October 2013 through September 2014, the number of bankruptcy cases filed more than doubled the number of civil and criminal cases).

¶ 86    *Schmidt* also says that the need to address collectibility "is a burden created by the negligent attorney." 335 P.3d at 428. To this observation, the majority adds: "And a plaintiff in legal malpractice already has the burden of proving negligence *twice*." While both

39

observations are accurate, they fall short of establishing unfairness in two ways.

¶ 87 One, whatever a plaintiff must prove to prevail in a negligence case is always necessitated by the defendant's alleged negligence. In a legal malpractice case, exactly the same could be said of the plaintiff's burden to prove the case within a case; yet that burden is universally accepted across all jurisdictions. Various iterations of proximate cause and foreseeability — sometimes labyrinths resulting from a defendant's negligence — have been attacked, to no avail. *See Sego v. Mains*, 41 Colo. App. 1, 4, 578 P.2d 1069, 1072 (1978) ("The plaintiff lastly asserts that the jury instruction which dealt with proximate cause and foreseeability imposed too onerous a burden of proof upon her.").

¶ 88 Two, merely because a burden is difficult does not make it unfair, at least where, as discussed below, the plaintiff can meet it. *Compare DeCola v. Bochatey*, 161 Colo. 95, 100, 420 P.2d 395, 397 (1966) ("[I]n our view the trial court committed no error when it held, in effect, that the defendants had failed to sustain the rather onerous burden of proof which devolves upon one who seeks through adverse possession to divest the record owner of his lawful

title to real property."), *with Prutch v. Ford Motor Co.*, 618 P.2d 657, 660 (Colo. 1980) ("To impose an impossible or unreasonably onerous burden of proof is to deny many consumers a meaningful remedy."). After all, in Colorado, statutory unconstitutionality must be proven beyond a reasonable doubt, the heaviest burden of all. *See TABOR Found. v. Reg'l Transp. Dist.*, 2016 COA 102, ¶ 16 (*cert. granted* Jan. 23, 2017).

¶ 89    The second policy rationale the majority puts forth, quoting *Schmidt*, 335 P.3d at 428, is that the defendant attorney is better positioned to prove uncollectibility because "the attorney should have investigated the solvency of the defendant in the underlying case at the beginning of the client's case." But I have been unable to find a case holding that a lawyer malpracticed by failing to investigate collectibility of a potential judgment debtor before filing suit. And even if such a case could be imagined — perhaps a collision with a vehicle driven by a thief seeking to escape the police — as relevant here, the majority fails to explain why a lawyer could not assume collectibility because a Colorado physician would maintain the statutorily required insurance coverage. In contrast, the underlying claim in *Schmidt* was a slip and fall in a grocery

41

store. And in any event, if the lawyer had undertaken some inquiry into collectibility, that information would be in the lawyer's files, subject to the plaintiff's discovery.

¶ 90 The majority also cites *Smith v. McLaughlin*, 769 S.E.2d 7, 18 (Va. 2015). But *McLaughlin* did not address the comparative burdens on the plaintiff and the defendant lawyer of proving collectibility. Instead, the *McLaughlin* court observed that "[i]t is unfair to presume that a silent record means that a judgment is uncollectible." *Id.* Yet, the court also recognized that, "successfully prosecuting a claim to judgment is only half of the marathon that is redressing an injury in our judicial system. Once armed with a judgment, a plaintiff then has 20 years to collect that award . . ., which can be frustrated by a number of factors." *Id.* As indicated above, the most obvious such factor would be bankruptcy.

¶ 91 But more importantly, the record here is not silent. Instead, it shows that despite Mr. LeHouillier's having notified Dr. Hughes of the potential claim and urging the doctor to contact his professional liability insurance carrier, no response from either the doctor or his insurer was received. If the doctor carried such insurance, his failure to notify the carrier, and the carrier's failure to contact Mr.

42

LeHouillier for information on which to adjust the claim, would be inexplicable.

¶ 92 "Third, to require the client to introduce evidence of collectibility would often be at odds with evidence rules and case law generally excluding evidence of insurance coverage." But evidence concerning a defendant's insurance or lack thereof is usually precluded because such evidence might improperly influence the jury's determination of liability. *See* CRE 411 ("Evidence that a person was or was not insured against liability is not admissible upon the issue whether he acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness."); *Johns v. Shinall*, 103 Colo. 381, 387-90, 86 P.2d 605, 608 (1939).

¶ 93 In the legal malpractice setting, the coverage question pertains not to the defendant lawyer but to the hypothetical defendant in the underlying action. So, the risk that a jury would conflate coverage and liability is low. And in any event, to avoid jury confusion, trial

of the collectibility issue could be bifurcated. *See Hoppe v. Ranzini*, 385 A.2d 913, 919 (N.J. Super. Ct. App. Div. 1978).

¶ 94 "Fourth, a delay between the original injury and a legal malpractice claim is common, which could hurt the client's opportunity to gather evidence about collectibility." True enough, any delay after the defendant lawyer was retained and had conducted a reasonable investigation as required by C.R.C.P. 11 would be attributable to the lawyer. But neither *Schmidt* nor *Kituskie*, both again cited by the majority, explains why delay would be particularly detrimental to a plaintiff's proving collectibility.

¶ 95 With most hypothetical defendants, and especially a professional — as here — the best evidence of collectibility would be insurance coverage. Consider that showing such coverage would require just two easy and inexpensive steps: a short deposition of the hypothetical defendant to identify the insurer and service of a subpoena duces tecum on that insurer to obtain a copy of the policy.

¶ 96 Yes, the process would be more complex if the hypothetical defendant never obtained coverage or if a claims-made policy had lapsed. Still, the hypothetical defendant could be deposed to

44

explore his or her net worth, as can be done post-judgment under C.R.C.P. 69(i). Titled assets, primarily real estate, could be proven through public records. And an asset search firm could be employed to provide expert testimony tying this information together. Hardly a Herculean task.

¶ 97 "Fifth, the insolvency of the defendant in the underlying case permits the attorney to mitigate or to avoid the 'consequences of one's negligent act,'" and as a consequence, the benefitted attorney should bear the "risks and uncertainties of proving it." (Citation omitted.) But again, this formulation — especially the reference to "mitigate" — only begs the question of whether collectibility should be an essential component of proving causation and damages. Recall that under C.R.C.P. 8(c), insolvency is mitigation evidence only because the plaintiff has *already* proven causation and damages.

¶ 98 Here, the majority cites *Lindenman v. Kreitzer*, 775 N.Y.S.2d 4, 8 (N.Y. App. Div. 2004), and *Jourdain v. Dineen*, 527 A.2d 1304, 1306 (Me. 1987). But *Lindenman* is just another delay analysis, "since the legal malpractice action is likely to have been brought years after the underlying events." 775 N.Y.S.2d at 9. And

*Jourdain* relied on Me. R. Civ. P. 8(c), which is very similar to C.R.C.P. 8(c).

¶ 99 "Sixth, placing the burden on the attorney does not eliminate the effect of insolvency; if the attorney proves that a judgment is not collectible, damages could be mitigated or eliminated." On this basis, the majority "disagree[s] with those cases that hold that placing the burden on an attorney results in a 'windfall' for the client."

¶ 100 But this statement fails to answer the question of who should bear the burden for two reasons. First, it evokes mitigation. Second, it does not explain how the possibility of the defendant lawyer presenting evidence that would persuade the trier of fact to reduce the damages below the amount of the hypothetical judgment avoids the risk that in the absence of such evidence, the plaintiff would enjoy a windfall.

¶ 101 More importantly, this formulation conflates two principles: collectibility and insolvency. Collectibility means "the degree to which a judgment can be satisfied through collection efforts against the defendant." Black's Law Dictionary 280 (8th ed. 1999). In contrast, "[a] debtor is insolvent if the sum of the debtor's debts is

greater than all of the debtor's assets at a fair valuation."
§ 38-8-103(1), C.R.S. 2016. And therein lies the fundamental problem with the majority's approach — insolvency is more than the reciprocal of collectibility.

¶ 102    The burden on a plaintiff of proving collectibility would be satisfied by showing insurance coverage or sufficient unencumbered assets from which part of the judgment could probably have been collected, as discussed above. But if the burden is proving insolvency, the defendant lawyer would have to first negate insurance coverage — admittedly no more difficult than proving it. But then the lawyer would have to reconstruct the hypothetical defendant's entire financial position, accounting for *all* of his or her assets and liabilities, to show insolvency. In other words, proving uncollectibility implicates, as numerous courts have recognized in many different contexts, "the difficulty of proving a negative." *See, e.g., Rooks v. Robb*, 871 N.W.2d 468, 471 (N.D. 2015).

¶ 103    Seventh, "plaintiffs in the vast majority of negligence cases do not have to prove that any judgment that they might win would be collectible. Collectibility is simply not a value that most negligence

cases enter into the calculus of causation." True enough. But whether the plaintiff may recover any of his potential judgment matters not to whether the defendant tortfeasor has actually harmed him. And as we all agree, legal malpractice cases are distinct from most negligence cases — the borders of the case within a case construct extend beyond entry of judgment in the underlying case and include whether any judgment would have been collectible.

¶ 104   Along with these seven policy considerations, the majority relies on the Restatement (Third) of the Law Governing Lawyers. It has frequently been cited in Colorado. *See, e.g., Mercantile Adjustment Bureau, L.L.C. v. Flood*, 2012 CO 38, ¶ 20; *Hannon Law Firm, LLC v. Melat, Pressman & Higbie, LLP*, 293 P.3d 55, 61 (Colo. App. 2011). For this reason, I address it, but do not do so with the other secondary sources in the majority opinion that lack a citation history in Colorado.

¶ 105   The particular wording on which the majority relies is cryptic:

> Thus, the lawyer's misconduct will not be the legal cause of loss to the extent that the defendant lawyer can show that the judgment or settlement would have been uncollectible, for example because the previous defendant

was insolvent and uninsured. *The defendant lawyer bears the burden of coming forward with evidence that this was so.* Placement of this burden on the defending lawyer is appropriate because most civil judgments are collectible and because the defendant lawyer was the one who undertook to seek the judgment that the lawyer now calls worthless. *The burden of persuading the jury as to collectibility remains upon the plaintiff.*

Restatement (Third) of the Law Governing Lawyers § 53 cmt. b (2000) (emphasis added).

¶ 106 In any event, as discussed above, the lack of a response to Mr. LeHouillier's demand letter constitutes some evidence of uncollectibility. Thus, even under the Restatement view, "[t]he burden of persuading the jury as to collectibility remains upon the plaintiff." *Id.*

¶ 107 In the end, I would follow the weight of case authority and conclude that the jury was properly instructed. Ms. Gallegos failed to present any evidence of collectibility. For these two reasons, I would reverse the judgment against Mr. LeHouillier and dismiss the case.